C. B. Kniskern, Jr. (of Felix, Kniskern, Neuman & Rees), Miami, Fla., for plaintiff.

H. E. Heine, Jr., Sp. Asst. to Atty. Gen., Washington, D. C., James L. Guilmartin, U. S. Atty., Miami, Fla., for defendant.

HOLLAND, Chief Judge.

This action for recovery of income taxes and interest paid thereon was tried by the Court without a jury. There appeared as attorney for the plaintiff, C. B. Kniskern, Jr., of Felix, Kniskern, Neuman & Rees, Miami, Florida, and as attorney for the defendant, H. E. Heine, Jr., Special Assistant to the Attorney General, Washington, D. C. The case was tried on the issues made by the pleadings, oral testimony and other evidence submitted to the Court. The Court, having concluded that its judgment should be for the plaintiff, makes the following findings of fact and conclusions of law.

### Findings of Fact.

1. The plaintiff is an individual residing in Dade county, Florida. This action is brought under Title 28, U.S.C. §

**Herbert W. VIRGIN, Jr., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 5057–M.**

United States District Court
S. D. Florida, Miami Division.

Aug. 3, 1954.

1346(a). The plaintiff's claim, exclusive of interest, does not exceed $10,000.

2. Plaintiff and his wife, Frances T. Virgin, were married in June of 1934. Plaintiff, who is an orthopedic surgeon, was employed at the time of his marriage at a hospital and clinic located in Madison, Wisconsin. He was making a small salary, however, his wife was from a wealthy family and owned a considerable amount of securities which had been given her by her father. The plaintiff was quite self-conscious about the disparity in economic positions between himself and his wife, and, prior to his marriage, he had reached an agreement with his future wife that anything she had acquired from her parents was to be her separate property and that he would have no interest in it. Plaintiff's parents had experienced considerable difficulties between themselves over money matters and were subsequently divorced as a result of such troubles. Two of plaintiff's sisters had, by working after their marriages, financed the professional beginnings of their husbands, and, as a result, there had arisen between the sisters and their husbands friction and misunderstandings. The plaintiff related these matters to his future wife prior to the marriage and expressed his determination that similar difficulties would not arise in his family. He was also determined that he would maintain his wife and any children, and provide for all of their needs on his earnings.

3. After plaintiff and his wife had been married approximately a year, it became necessary for him to leave his employment and enter into private practice. In order to finance his first office, he borrowed from his wife, on June 7, 1935, the sum of $1,730.46, which his wife raised by selling some of the securities given to her by her father. This loan was made upon the oral agreement that plaintiff would repay the loan when he could reasonably do so without endangering the family's health and finances, and that the loan would bear 8% interest, compounded annually. In using the phrase, "without endangering the fam-ily's health and finances," the parties meant that the loan would come due at such time as plaintiff's earnings enabled him to make payment and, in addition, continue to supply the funds for family living expenses and provide for the anticipated medical expenses of the family. Plaintiff understood that he was to be the judge of when the condition for time of repayment had been met, but that he was required to be reasonable and could not arbitrarily determine that the condition had not been met when in fact it had been met. The rate of 8% was selected by the plaintiff not only because it was a normal rate for that time, but also because he had, prior to his marriage and while he was in college, borrowed money from his parents at the rate of 8%. The feature of compounding the interest annually was added by the plaintiff because he wanted the loan to provide a good return for his wife at such time as he was able to repay her. He wanted the loan to be on a strictly business basis and to be good business from his wife's point of view. He did not want his wife's family or friends to be able to say with justification that he had ever used his wife's money on any basis other than on a business basis advantageous to her.

4. On October 13, 1936, plaintiff borrowed $7,946.84 from his wife; on February 1, 1937, he borrowed $3,179.73 from her; and on April 29, 1937, he borrowed $1,691.66 from her. These loans were all made upon the same agreement as the first loan as to time of repayment and interest rate. The money for these loans was raised by plaintiff's wife by selling more of her securities. These three loans were all made for the purpose of building a home which plaintiff considered he was obligated to provide. Upon a later sale of the home, the proceeds therefrom were deposited in plaintiff's office bank account.

5. In January of 1941, upon medical advice, plaintiff, who had suffered many years from rheumatic fever, moved with his family from Wisconsin to Pensacola, Florida. While in Pensacola, each of his three children, who were also rheumatic

fever sufferers, contracted infantile paralysis. Subsequently, in 1942, again upon medical advice, plaintiff and his family moved to Miami, Florida. Upon arriving in Miami, plaintiff was confined to a hospital for a prolonged period and thereafter was confined to bed at home for several months. Plaintiff was unable, because of the state of his health, to begin practicing medicine in Miami, until about September of 1943.

6. In November of 1943, plaintiff made the final loan from his wife. This loan was in the amount of $3,606.87, and the money was raised by his wife selling the last of the securities which she had acquired from her father. This loan, as the other loans, was made on the oral agreement that it would be repaid by plaintiff when he was reasonably able to do so without endangering his family's health and finances, and that it would bear 8% interest compounded annually. The main purpose of this loan was to pay off a bank loan which plaintiff had previously secured.

7. No notes were executed as evidence of these loans, the plaintiff feeling that his word, as a matter of personal honor, was sufficient. For the same reason, plaintiff had refused to execute notes to his father, although his father had requested that he do so, on the father's loans of money to plaintiff during the time plaintiff was in college.

8. The year 1946 was plaintiff's first big year of medical practice. Prior to that time, plaintiff's earnings were small, and he was burdened with heavy medical expenses for himself and his family. In 1946, plaintiff was reasonably able to repay the loans without endangering his family's health or finances. During that year, plaintiff made four separate payments on his indebtedness as follows:

(1) January 1, 1946—$ 1,737.84
(2) March 22, 1946— 3,500.00
(3) August 23, 1946— 9,137.30
(4) August 27, 1946— 11,000.00

Payment No. 1 was made by plaintiff's transferring to his wife, with her consent, a physical therapy business at book value. His wife thereafter operated this business profitably. Several years later, as a result of changed business circumstances, she sold the business back to plaintiff at book value. The proceeds of the sale were received by plaintiff's wife for her own purposes.

Payment No. 2 was made by plaintiff's purchasing for his wife in her name and with her consent a charter fishing boat. Plaintiff's wife thereafter engaged in the charter fishing boat business with the captain of this boat on a share basis. When the business did not prove profitable, she sold the boat at a profit and received the proceeds for her own purposes.

Payment No. 3 was made by plaintiff's purchasing for his wife in her name and with her consent certain Keystone Custodian Fund shares. Plaintiff's wife, at the time of the trial, still owned most of these shares.

Payment No. 4 was made by plaintiff's purchasing for his wife in her name and with her consent certain real estate located in Miami, Florida. This real estate was subsequently sold by plaintiff's wife who received the proceeds of sale for her own purposes.

9. The payments set forth above were allocated by plaintiff and his wife between principal and interest in the following manner:

Payment No. 1 ($1,737.84): to interest of loan of June 7, 1935.

Payment No. 2 ($3,500.00): $454.34 to balance of interest on loan of June 7, 1935; $1,730.00 in satisfaction of principal of loan of June 7, 1935; and $1,316.66 to apply on interest of loan of October 13, 1936.

Payment No. 3 ($9,137.30): $5,986.55 to interest on loan of October 13, 1936 and $3,150.75 to principal of loan of October 13, 1936.

Payment No. 4 ($11,000.00): $4,795.25 in satisfaction of principal of loan of October 13, 1936; $3,179.73 in satisfaction of principal of loan of February 1, 1937; $1,691.66 in satisfaction of principal of loan of April 29, 1937; and $1,-

334.36 to apply on principal of loan of November, 1943.

The above allocations were not made at the time of each payment, it being understood at those times merely that the payments were on plaintiff's indebtedness to his wife. The allocations were made toward the end of 1946 by plaintiff and his wife when they were closing their financial records for the year. After allocating payments No. 1 and 2, as above stated, plaintiff, who was surprised at how the interest had accumulated, wished to make some substantial reductions of original principal, hence, the interest on the loan of October 13, 1936 was arbitrarily cut off as of some date prior to 1946 and interest paid up to that date. The balance of plaintiff's payments for the year 1946 were applied against original principal in the order that the loans were made. As a result of a mathematical error, plaintiff and his wife credited $1 more than was actually paid out of the second payment listed above. Plaintiff concedes that his allowable interest deduction for the year arising from said second payment should be reduced by the amount of $1 from the amount credited to interest by the plaintiff and his wife.

10. During the year 1947, plaintiff made two payments to his wife as follows:

| March 25, 1947 | $2,409.59 |
| December 24, 1947 | $ 950.00 |

The payment of March 25, 1947 was made by plaintiff's purchasing for his wife in her name and with her consent a new automobile. Plaintiff had furnished his wife with an automobile, but she wanted a newer and more costly model. She subsequently sold the automobile acquired in March of 1947 and retained the proceeds for her own purposes. The payment of December 24, 1947, was made by plaintiff's purchasing for his wife in her name and with her consent a racing sailboat. Sailboat racing was the hobby of plaintiff's family and each member of the family, including the children, own or have owned his or her own sailboat. Plaintiff had furnished his wife with a small sailboat, but she wished to own a larger and more expensive boat, which was supplied by the payment of December 24, 1947. Plaintiff's wife subsequently sold this boat and retained the proceeds for her own purposes.

11. Both of the payments made during 1947 were, by agreement between plaintiff and his wife, credited to interest inasmuch as the original principal of the loans had been greatly reduced during 1946, the last payments having been credited to principal, and there were substantial amounts of interest remaining outstanding.

12. Plaintiff has always kept his books and filed his income tax returns on the cash receipts and disbursements basis of accounting.

13. The defendant determined that the interest paid by plaintiff to his wife during the calendar years 1946 and 1947 was not deductible by plaintiff on his income tax returns for said years. As a result of this determination and other adjustments not in issue, the defendant collected from the plaintiff on July 5, 1951, additional income tax for the calendar year 1946 in the amount of $6,107.88, together with interest thereon in the sum of $1,530.98, and additional income tax for the year 1947 in the amount of $3,025.28, together with interest thereon in the sum of $576.79. On August 6, 1951, plaintiff filed with the defendant in due form written claims for the refund of such taxes and interest which were attributable to disallowance of the interest deductions in issue, which claims were rejected on November 15, 1951. This action was thereafter instituted within the time prescribed by law.

14. The loans hereinabove set forth were bona fide and as a result of the payments made by plaintiff to his wife during 1946 and 1947, he is entitled to the following deductions for interest paid upon indebtedness:

| For 1946 | — | $9,494.39 |
| For 1947 | — | $3,359.59 |

15. Plaintiff has conceded the following adjustments to his net income for the

calendar years 1946 and 1947, and these adjustments shall be taken into consideration in determining the amount of the overpayment of tax and interest for those years:

(a) For the year 1946, a short-term capital loss of $205 claimed on the sale of three horses is to be disallowed.

(b) For the year 1946, $240 of a claimed $412.80 deduction for interest paid to plaintiff's mother, B. G. Virgin, is to be disallowed.

(c) For the year 1946, plaintiff's long-term capital gain from the sale of his interest in a C. B. S. house was overstated in his return by $102.08 and his ordinary net income was understated in his return by the same amount, due to the fact that plaintiff erroneously claimed depreciation on said house for the full year in the amount of $175, whereas he was only entitled to claim depreciation on said house for 5/12ths of said year, said allowable depreciation being in the amount of $72.92.

(d) For the year 1947, there shall be disallowed a deduction of $233.95 claimed for interest paid to plaintiff's mother, B. G. Virgin.

16. The parties have stipulated that upon the Court's determination of the issue as to interest paid to plaintiff's wife during the taxable years involved, they will thereupon agree as to the amount of plaintiff's overpayment of tax and interest, and that judgment may thereupon be entered for such agreed sum.

### Conclusions of Law.

1. The Court has jurisdiction of this cause and of the parties hereto.

2. The plaintiff is entitled, under Section 23(b), Internal Revenue Code, 26 U.S.C., to the following deductions which have not been allowed by the defendant:

For 1946 — $9,494.39
For 1947 — $3,359.59

3. Upon submission to the Court of a stipulation as to the amount of the recovery, judgment shall thereupon be entered for such sum together with interest as provided by law from July 5, 1951.