**UNITED STATES of America,**
**Appellant,**

v.

**Herbert W. VIRGIN, Jr., Appellee.**
**No. 15556.**

United States Court of Appeals
Fifth Circuit.

March 16, 1956.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to the Atty. Gen., E. David Rosen, Asst. U. S. Atty., Miami, Fla., Davis W. Morton, Jr., A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellant.

C. B. Kniskern, Jr., Miami, Fla., for appellee.

Before BORAH, TUTTLE and JONES, Circuit Judges.

JONES, Circuit Judge.

Dr. Herbert W. Virgin, Jr., the appellee, to whom we will refer as the taxpayer, is an orthopedic surgeon practicing in Miami, Florida. Against him the Commissioner of Internal Revenue made deficiency assessments of income tax for 1946 and 1947, resulting, so far as here involved, from the disallowance

of interest claimed to have been paid by the taxpayer to his wife. The deficiency assessments were paid, claims for refund were filed and rejected. Suit for refund was brought, tried before the district court without a jury, findings of fact and conclusions of law were made, 123 F.Supp. 882, and judgment for the taxpayer and against the Government was entered for $9,002.66 with interest from the date of payment. The Government, assuming the burden of showing that the court's findings and conclusions are clearly erroneous, appeals.

The taxpayer and his wife were married in 1934. The taxpayer was employed at a hospital and clinic in Madison, Wisconsin. His salary was small. His wife had a considerable amount of securities given her by her father. About a year after the marriage the taxpayer opened his own office, using $1,730.46 borrowed from his wife and obtained by her from the sale of securities. In 1936 and 1937 he borrowed between twelve and thirteen thousand dollars for the building of a home. The home was later sold and the proceeds went into the taxpayer's bank account. The health of the taxpayer and of his children impelled a move in 1941 to Pensacola, Florida, and like reasons caused a move the following year to Miami. The illness of taxpayer prevented his reentry into the practice of his profession for something more than a year. To pay off bank loans and get started in practice he borrowed the further sum of $3,606.87 from his wife. No notes or other written promises to pay were given to evidence any of the loans. The taxpayer explained that:

"she trusted me and I trusted her. It had not been done in my own family life; I am talking about my father's family. It had never been a matter of signing notes for any debts previously encountered in my life, and I didn't want any contract to sully the good feeling that existed between us. It was simply a matter of honor that I owed the debt to her and she understood it that way."

In stating the terms of the loans the taxpayer several times said that he had undertaken to pay and his wife expected to receive interest at eight per cent., compounded annually. As to the time of repayment, the taxpayer used several different expressions in his testimony. As examples we quote:

"I would pay her back when I could from funds that I made myself, and that it would be at a time when it would not hurt my family's economic situation or jeopardize the family's health."

"It was to be repaid when I could, without hurting the economic status of my family."

"I was to repay it when I could without hurting the family finances."

"I would repay it when I could out of my funds without hurting the family exchequer."

"I had to pay it back when I was able to without detriment to my family's health or their economic level, and she had sense enough to understand that I was best able, both from the standpoint of knowledge of health and knowledge of my financial status, to reasonably determine the time when I could repay her. Now, that was the way it was set up, and I have always felt that I was a reasonable person, and I think she felt that way too."

"My wife knew that I was a reasonable man and she had faith in me that I would at the right time be reasonable about the repayment of those loans."

Prior to 1946, no payments were made by the taxpayer on the loans although during the period from 1942 through 1945 he had funds available for investment in various ventures. He explained as reasons for making investments rather than paying his wife, his poor health and the uncertainty of his future earning capacity. In four transactions rang-

ing from January 1, 1946, to August 27, 1946, the taxpayer transferred to his wife his physical therapy department at its book value of $1,737.84 (subsequently resold to the taxpayer), and purchased in her name a charter fishing boat, Keystone Custodian Fund Shares, and fourteen lots in a Coconut Grove, Florida, subdivision, expending for these purchases $23,637.30. Thereafter there was an allocation made of the amounts out of each of such transfers which would be called interest. In 1947 the taxpayer purchased an automobile and a racing sailboat for his wife, expending for them $3,359.59, all of which was called interest. Other facts, which need not be here set forth, are in the findings of the District Court, *supra.*

The applicable portion of the statute is:

"In computing net income there shall be allowed as deductions:

\* \* \* \* \*

"(b) All interest paid or accrued within the taxable year on indebtedness \* \* \*." Sec. 23(b) Internal Revenue Code of 1939, 26 U.S.C.A. § 23(b).

The District Court found that the loans to the taxpayer by his wife were bona fide and that he was entitled to deductions for the interest paid upon indebtedness. Although this was included as a finding of fact it was, and we shall treat it as, a conclusion of law. It may be said here, as in an earlier case this Court has said:

"The case then is not one for the weighing of evidence, and the resolution of testimonial differences, and in which therefore, we must take the facts as the District Judge has found them, but one for the determination by us of the legal effect of the facts as the record presents them, clearly, simply and without controversy." United States v. South Georgia Ry. Co., 5 Cir., 1939, 107 F.2d 3.

The question for our determination is whether there was an enforceable obligation of the taxpayer to his wife such as would constitute an "indebtedness" within the meaning of the Internal Revenue Code. "The words 'interest on indebtedness' should be accorded their usual, ordinary and every day meaning." Preston v. Commissioner of Internal Revenue, 2 Cir., 1942, 132 F.2d 763, 765. The meaning of "indebtedness" is synonymous with that of "debt", which this Court defined in these terms:

"A debt is a sum of money due by contract, express or implied. The sum of money may be payable at a fixed time or upon a contingency. When payable upon a contingency, it becomes a debt only when the contingency has happened." Guaranty Trust Co. of New York v. Galveston City Railroad Co., 5 Cir., 1901, 107 F. 311, 317.

In applying the same rule with respect to income tax deductions, the Eighth Circuit has said:

"A debt is 'that which is due from one person to another, whether money, goods or services; that which one person is bound to pay to another, or perform for his benefit.' Webster's New International Dictionary. 'In order to create an indebtedness there must be an actual liability at the time, either to pay then, or at some future time.' Bouv.Law Dict., Vol. 2, page 1531. 'Every debt must be solvendum in praesenti, or solvendum in futuro— must be certain and in all events payable; whenever it is uncertain whether anything will ever be demandable by virtue of the contract, it cannot be called a "debt." While the sum of money may be payable upon a contingency, yet in such case it becomes a debt only when the contingency has happened, the term "debt" being opposed to "liability" when used in the sense of an inchoate or contingent debt.' 17 Corpus Juris, 1377. [Citing cases.] The term 'indebtedness' as used in

the Revenue Act implies an unconditional obligation to pay. Any definition more flexible would only encourage subterfuge and deception." Gilman v. Commissioner of Internal Revenue, 8 Cir., 1931, 53 F.2d 47, 50, 80 A.L.R. 209.

It has been said that there must be a fixed or determinable maturity in order that there be a debt. Such a doctrine was announced by this court in this language:

"There is, thus, an entire absence here of the most significant, if not the essential feature of a debtor and creditor as opposed to a stockholder relationship, the existence of a fixed maturity for the principal sum with the right to force payment of the sum as a debt in the event of default." United States v. South Georgia Ry. Co., supra.

The foregoing language was quoted with approval in the Fourth Circuit where it was said that "It has been repeatedly held that one of the fundamental characteristics of a debt is a definite determinable date on which the principal falls due." Brown-Rogers-Dixson Co. v. Commissioner of Internal Revenue, 4 Cir., 1941, 122 F.2d 347, 350. Not only must the agreement for payment be unconditional, it must be legally enforceable. Commissioner of Internal Revenue v. Park, 3 Cir., 1940, 113 F.2d 352; Autenreith v. Commissioner of Internal Revenue, 3 Cir., 1940, 115 F.2d 856.

■■ The agreement as the taxpayer stated it and as he interpreted it, permitted him to determine the requirements for the "family finances", "the family's health", the "family economic level", and, if he so chose as he did choose, he might divert funds from his earnings into income producing investments rather than in repayment of the obligation to his wife which bore compound interest at the rate of eight per cent. When the loans were made it could not be said that there would ever be a time when the taxpayer would have or could have determined that the contingency had happened upon which payment was to be made. The question as to when, if ever, payment should be made was to be resolved by the taxpayer; and although he and his wife testified that he was to be reasonable and that he was not to be arbitrary in his decision, the nature of the condition, i. e. the financial security of his family, was such that no judgment could have been substituted for his. We need not, and do not, hold that in no event will a promise to pay upon the happening of a future contingent event support the payment of deductible interest. The burden rests upon the taxpayer to show the Commissioner wrong in disallowing the deduction. Woodward v. United States, 8 Cir., 1953, 208 F.2d 893. That burden has not been met by the showing here made of a promise to repay borrowed money if, and only if, the family economic security of the borrower becomes such that, in his opinion it would not be jeopardized by repayment.

Judgment should have been for the United States. In order that such a judgment may be entered, the judgment appealed from is

Reversed.