ERNEST W. BROWN, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58017. Filed June 21, 1957.

*John P. Lipscomb, Jr., Esq.*, for the petitioner.
*Ellyne E. Strickland, Esq.*, for the respondent.

684

MURDOCK, *Judge:* The petitioner argues that it paid $466,000 to obtain contracts by which it acted as attorney in fact and manager for two reciprocal insurance exchanges; it was not entitled to amortize the cost because the contracts had an indefinite life; the contracts were canceled by the exchanges in 1952; and a deductible loss of $466,000 was sustained at that time. The Commissioner, in his brief, defends the disallowance on the grounds that the issuance of the debentures was not a bona fide transaction at arm's length, the debentures did not represent a genuine indebtedness, and no cost basis for the canceled contracts has been established.

The contract between Brown and the petitioner, represented by the offer of December 27, 1923, and its acceptance by the petitioner, expressly provided that the petitioner would provide the advisory committee of each exchange prior to December 31, 1923, with a letter signed by the petitioner's president and its directors containing, among others, the following condition:

Our acceptance of the appointment of "Ernest W. Brown, Inc. by its President Ernest W. Brown" as attorney-in-fact for New York Reciprocal Underwriters (Individual Underwriters) is with the distinct understanding that Ernest W. Brown is the only individual connected with said corporation who has any authority to act for the subscribers at New York Reciprocal Underwriters (Individual Underwriters) ; and, further, it is our understanding that should Ernest W. Brown cease to act as President of Ernest W. Brown, Inc. for any reason whatsoever, said corporation's appointment shall thereupon immediately terminate ; and we further agree that the appointment of this corporation as such

attorney-in-fact may be terminated by you at any time in your discretion, with or without cause, after written notice to us.

It is apparent from that provision that the appointment of the petitioner as attorney in fact and manager for these two exchanges pursuant to which the $500,000 face value of bonds were issued to Brown, could not survive Brown's death in 1947, and if the petitioner had any loss it occurred prior to 1952. Likewise, the conclusion is inescapable that since the petitioner acted as attorney in fact and manager for these two exchanges after Brown's death in 1947 and until the end of December 1952, it must have been acting under some new arrangement, the cost of which has not been shown in this record and, therefore, the petitioner has not shown that it is entitled to any deductible loss for 1952 as a result of the cancellation at the end of 1952 of those undisclosed new arrangements.

The case would also have to be decided against the petitioner on the ground that its basis for loss on the two 1924 contracts and the business flowing therefrom was zero. A corporation is allowed to deduct for a loss sustained during the taxable year, not compensated for by insurance or otherwise, to the extent of the adjusted basis provided in section 113 (b). Section 113 provides that the adjusted basis for determining such loss shall be the same as it would be in the hands of the transferor if the property was acquired after December 31, 1920, by a corporation by the issuance of its securities in connection with a transaction described in section 112 (b) (5). See sec. 113 (a) (8) (A) and (b). Section 112 (b) (5) provides that no gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control of the corporation.

The $500,000 of bonds which Brown received as sole consideration for his acts were securities in the petitioner corporation within the meaning of section 112 (b) (5), and both before and immediately after the petitioner acquired the contracts and business in question Brown was the sole stockholder of the petitioner. The power of attorney and the designation as manager for New York Reciprocal Underwriters and Individual Underwriters, which Brown held, and the profitable business which they enabled him to conduct had cost him nothing. Nor did his *alter ego*, the petitioner, pay the exchanges anything for the contracts and the accompanying right to conduct the profitable business so long as Brown headed the petitioner and did the work. The only consideration paid by the petitioner went to Brown.

The petitioner argues that section 112 (b) (5) does not apply because the powers of attorney and the designations as manager for

New York Reciprocal Underwriters and Individual Underwriters, which Brown held, were nonassignable and could not be and were not transferred to the petitioner by Brown in exchange for the $500,000 of debentures. It nevertheless argues that Brown gave full value for the debentures. It describes what happened as follows:

Petitioner acquired the business of managing two reciprocal insurance exchanges, Individual Underwriters and New York Reciprocal Underwriters, which had been in existence since 1881 and 1891, respectively. This business had been conducted by Brown since 1918 and was to be carried on by Brown on behalf of petitioner.

Brown on one day held the powers of attorney, was manager for the two exchanges and, as a result, was conducting a profitable business, whereas on the next day the petitioner held the powers of attorney, was the manager and, through Brown alone, was conducting the same profitable business. Whatever went from Brown to the petitioner was in consideration of the issuance to Brown of the $500,000 of debentures. Cf. *John W. Walter, Inc.*, 23 T. C. 550. Brown had a zero basis for whatever he had that went over to the petitioner, and under the provisions of the Internal Revenue Code referred to above the petitioner took the same zero basis which Brown had. Therefore, whenever those particular contracts terminated the petitioner had no deductible loss. It is academic to discuss whether Brown in effect transferred the contracts themselves or whether he transferred some intangible in the nature of goodwill, the right to benefit financially through representing the exchanges as attorney in fact and manager. Whatever went from Brown to the petitioner, went with a zero basis.

There is lurking in this case a suggestion that the debentures might have been issued for valuable services performed by Brown in obtaining the two contracts for the petitioner. The petitioner does not state directly any such argument, but in any event it need not go unanswered. The exchanges wanted Brown alone, no other, to represent them but they were willing to have him do it under corporate name, since that was his desire. The exchanges continued to look to him alone to do the work involved. Neither he nor the petitioner had any expenses or employees in those years other than Brown himself and his salary. The whole arrangement whereby the petitioner corporation was substituted for Brown was couched in such terms as to leave no doubt that Brown was to continue to do all the work even though his *alter ego*, the petitioner corporation, was named as the attorney in fact and manager for each exchange. The change appears to have been for Brown's benefit only, although there is a suggestion that eventually the corporation might in some way continue to conduct the business without Brown. Actually, it did continue to conduct the business for a short time after his death in 1947, but, as already stated,

under some undisclosed new arrangement. It does not appear that Brown did any more in December 1923 than merely state to the exchanges his desires to have his corporation substituted for him individually as attorney in fact and manager for these two exchanges. Thus, it does not appear from this record that the debentures actually were issued for valuable services of Brown in procuring the contracts and business for the petitioner. It appears, instead, that he merely effected a transfer of the business from himself individually to the corporation, whose principal, if not only, substance was himself and his ability to perform the work. He died in 1947 and these contracts did not survive that event.

Reviewed by the Court.

*Decision will be entered for the respondent.*