JOE E. BORG AND RUTH P. BORG, PETITIONERS *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2395–66. Filed May 7, 1968.

*Charles A. Whitebook*, for the petitioners.
*Walter O. Johnson*, for the respondent.

FEATHERSTON, *Judge:* Respondent determined a deficiency in petitioners' 1962 joint Federal income tax of $3,844.18. Both parties having conceded certain issues, the sole issue remaining for decision is whether petitioners' deductible share of the net operating losses incurred by an electing small business corporation exceeds the amounts allowed by the respondent.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations and exhibits thereto are incorporated herein by this reference.

Petitioners Joe E. Borg and Ruth P. Borg are husband and wife and resided at Tulsa, Okla., at the time of the filing of the petition herein. They filed their joint Federal income tax return for 1962 with the district director of internal revenue, Oklahoma City, Okla.

Borg Compressed Steel Corp. (hereinafter referred to as Borg Steel) is an Oklahoma corporation, duly incorporated and existing under the laws of the State of Oklahoma, with its principal place of business at Tulsa, Okla. Its charter was granted on August 1, 1947, and it has remained engaged in the scrap-processing business continuously from its incorporation until the date of trial herein.

Borg Steel had only one class of capital stock during the period involved in this case: common capital stock. As of July 31, 1961, and throughout the year 1962, the corporation had issued and outstanding 3,000 shares of common capital stock, owned by the following persons:

| | Shares |
|---|---|
| Petitioner Joe E. Borg | 1,347 |
| Petitioner Ruth P. Borg | 1,153 |
| Monroe J. Friedman | 500 |

The petitioners' total basis in their common capital stock of Borg Steel as of July 31, 1961, was $25,000.

Borg Steel duly elected to file its U.S. income tax returns on the basis of a fiscal year ending on July 31, and has so filed its returns. The corporation employs the accrual method of accounting.

On August 10, 1960, Borg Steel elected to be free of tax as a small business corporation within the purview of subchapter S of the Internal Revenue Code of 1954,[1] commencing with its taxable year ending July 31, 1961.

For the fiscal year commencing August 1, 1960, and ending July 31, 1961, Borg Steel sustained an operating loss in the amount of $28,630.88. The petitioners claimed and were allowed a combined deduction of $23,859.07 of the corporation's operating loss on their 1961 U.S. income tax return as their share of the loss as electing shareholders of a subchapter S corporation.

On July 31, 1962, there was a balance due petitioner Joe E. Borg from Borg Compressed Steel Corp. on a promissory note of the corporation for cash advanced to it in the sum of $15,153.98.

For the fiscal year commencing August 1, 1961, ending July 31, 1962, Borg Compressed Steel Corp. sustained an operating loss in the amount of $37,564.83. Petitioners claimed a deduction on their 1962 income tax return of $31,304.03 as their share of the loss as electing stockholders of a subchapter S corporation. Respondent disallowed the loss claimed to the extent of $15,009.12. The matter in tabular form is set forth as follows:

| Loss claimed: | | |
|---|---:|---:|
| 1961 return (first year of election) | $23, 859. 07 | |
| 1962 return | 31, 304. 03 | |
| Total losses claimed 1961–62 | | $55, 163. 10 |
| Basis of petitioners' stock (7/31/61) | 25, 000. 00 | |
| Basis of indebtedness (balance due as of 7/31/62 on promissory note for cash advanced) | 15, 153. 98 | 40, 153. 98 |
| Amount of loss claimed in 1962 disallowed by respondent | | 15, 009. 12 |

On September 2, 1958, Borg Steel executed a promissory note to the First National Bank & Trust Co. of Tulsa, Tulsa, Okla. (hereinafter referred to as the bank) in the principal amount of $190,000, payable in installments. The proceeds of the loan as evidenced by this note went to the corporation and were used by the corporation in the operation of its business. As security for the loan the corporation

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

gave the bank a mortgage on substantially all of its equipment and machinery and the life insurance policies of the corporation on its officers.

On September 1, 1961, there was $67,500 due on the note given by Borg Steel to the bank dated September 2, 1958. On that date the corporation executed a new promissory note to the bank in the principal amount of $135,000; $67,500 of the new note was used by Borg Steel to pay the balance due on the note dated September 2, 1958, and the remaining balance was received and used by the corporation in the operation of its business. As security for the loan the corporation gave the bank a mortgage on substantially all of its equipment and machinery and the life insurance policies of the corporation on its officers.

In order for Borg Steel to obtain the loans from the bank, petitioners were required to pledge their personel assets and to endorse the notes. The endorsements were in the following language:

FOR VALUE RECEIVED, the undersigned, jointly and severally, in addition to the obligations imposed by endorsement, hereby unconditionally and absolutely guarantee to The First National Bank and Trust Company of Tulsa the payment of the within note according to its terms and tenor, agreeing to be bound by all the provisions thereof and to assume and to perform all the obligations therein contained in like manner as the makers thereof.

The undersigned further waive notice of the acceptance hereof and presentment for payment, protest and notice of protest and non-payment, of the within note or any installment thereof.

On July 31, 1962, there was a balance due to the bank of $105,000 on the note dated September 1, 1961.

The loans as evidenced by the notes dated September 2, 1958, and September 1, 1961, were paid in full. All payments were made by Borg Steel. The petitioners were not required to make any payments.

The notes executed by Borg Steel to the bank were carried on its books and records as notes payable to the bank. The corporation's balance sheet for its fiscal year ending July 31, 1962, did not show any indebtedness due the petitioners Joe E. Borg or Ruth P. Borg as a result of their endorsements of the notes to the bank.

During the fiscal years ending July 31, 1960, July 31, 1961, and July 31, 1962, the petitioner, Joe E. Borg, was employed by Borg Steel under a written employment contract dated January 17, 1953, on the basis of an annual salary of $36,000 per year, plus a bonus arrangement. This salary arrangement had been in effect since 1955 and in view of the services rendered as the principal officer of the corporation, the salary was reasonable in amount.

Because of the financial condition of Borg Steel, the petitioner, Joe E. Borg, was not paid any salary from the corporation for the

fiscal years July 31, 1960, and July 31, 1961. He drew the sum of $24,000 in salary from the corporation for the fiscal year ending July 31, 1962. The salaries paid and unpaid compensation by Borg Steel to Joe E. Borg may be seen in tabular form as follows:

| Borg Compressed Steel Corp. FYE July 31— | Salary paid under contract | Bonus paid | Salary unpaid | Total unpaid salary end of FY |
|---|---|---|---|---|
| 1955 | $36,000 | 0 | 0 | |
| 1956 | 36,000 | $4,000 | 0 | |
| 1957 | 36,000 | 25,000 | 0 | |
| 1958 | 36,000 | 0 | 0 | |
| 1959 | 36,000 | 0 | 0 | |
| 1960 | 0 | 0 | $36,000 | $36,000 |
| 1961 | 0 | 0 | 36,000 | 72,000 |
| 1962 | 24,000 | 0 | 12,000 | 84,000 |

Borg Steel did not accrue on its accounting records the unpaid salary of petitioner Joe E. Borg for the fiscal years ending July 31, 1960, July 31, 1961, and July 31, 1962. The petitioners, who reported their income on a cash basis, did not report the unpaid salary due Joe E. Borg from the corporation on their U.S. income tax returns filed for the years 1960, 1961, and 1962.

At the annual meeting of the board of directors of Borg Steel, held at Tulsa, Okla., on June 25, 1960, a resolution was adopted "that the Corporation do, and the Officers of the Corporation are hereby authorized and directed to execute and deliver to Joe E. Borg a Demand Note of the Corporation in the sum of $36,000, with interest at six per cent per annum from date, as evidence of the indebtedness of the Corporation for said salary due and owing and not as payment." Pursuant thereto, the corporation did, on July 31, 1960, execute and deliver to Joe E. Borg its promissory note payable to him on demand, in the sum of $36,000, bearing the following legend: "This Promissory Note given and accepted as evidence of the indebtedness of the Corporation for salary due only and not as payment."

Similar resolutions and notes were made for 1961 and 1962 for the amount of compensation due petitioner.

ULTIMATE FINDINGS OF FACT

On July 31, 1962, petitioners' adjusted basis in the capital stock of Borg Steel was $1,140.93.

On July 31, 1962, petitioners' adjusted basis of the indebtedness due them by Borg Steel was $15,153.98.

The sum of the adjusted basis of petitioners' stock in Borg Steel and the adjusted basis of indebtedness of the corporation to petitioners was only sufficient to entitle petitioners to deduct for the taxable year 1962

the amount of $16,294.91 as their prorata share of the corporation's net operating loss within the purview of section 1374(c).

OPINION

Petitioners owned stock in Borg Compressed Steel Corp. which had elected in 1961 as a small business corporation under section 1372(a) not to be subject to income taxes. In its fiscal year ending July 31, 1961, Borg Steel incurred a net operating loss of $28,630.88 which was allowed as a deduction to the shareholders, including the petitioners. In its fiscal year ending July 31, 1962, Borg Steel incurred a further net operating loss of $37,564.83. The question presented is what portion of this 1962 net operating loss petitioners are entitled to deduct in computing their individual income tax liabilities for the calendar year 1962.

Code section 1374(b)[2] provides that a shareholder of a corporation which has elected under subchapter S of the Code shall be allowed as a deduction his portion of the corporation's net operating loss. Section 1374(c)(2)[3] limits a shareholder's prorata share of such a corporation's net operating loss to the sum of (A) the adjusted basis of the shareholder's stock in such corporation, and (B) the adjusted basis of "any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year." Thus the answer to the question as to the amount of Borg Steel's loss that may be deducted by petitioners depends upon their adjusted basis for their stock and certain indebtedness of the corporation to them.

---

[2] SEC. 1374. CORPORATION NET OPERATING LOSS ALLOWED TO SHAREHOLDERS.

(b) ALLOWANCE OF DEDUCTION.—Each person who is a shareholder of an electing small business corporation at any time during a taxable year of the corporation in which it has a net operating loss shall be allowed as a deduction from gross income, for his taxable year in which or with which the taxable year of the corporation ends (or for the final taxable year of a shareholder who dies before the end of the corporation's taxable year), an amount equal to his portion of the corporation's net operating loss (as determined under subsection (c)).

[3] SEC. 1374. CORPORATION NET OPERATING LOSS ALLOWED TO SHAREHOLDERS.

(c) DETERMINATION OF SHAREHOLDER'S PORTION.—

\*       \*       \*       \*       \*       \*       \*

(2) LIMITATION.—A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of—

(A) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation (or, in respect of stock sold or otherwise disposed of during such taxable year, as of the day before the day of such sale or other disposition), and

(B) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation (or, if the shareholder is not a shareholder as of the close of such taxable year, as of the close of the last day in such taxable year on which the shareholder was a shareholder in the corporation).

During the period here involved Borg Steel had 3,000 shares of capital stock outstanding of which 2,500 shares with a cost basis of $25,000 were owned by petitioners. Borg Steel owed petitioner Joe E. Borg $15,153.98 on a promissory note for a cash loan. In addition, Borg Steel owed petitioner Joe E. Borg $84,000 on notes evidencing liability for salary unpaid for the years ended July 31, 1960, 1961, and 1962. Borg Steel also owed a balance of $105,000 on a note to the First National Bank & Trust Co. of Tulsa, endorsed by both petitioners and secured by assets of Borg Steel as well as the personal assets of petitioners.

Petitioners claimed and were allowed for 1961, their combined prorata share, i.e., $23,859.07, of the net operating loss incurred by Borg Steel in its fiscal year 1961. In its fiscal year 1962 Borg Steel incurred a net operating loss of $37,564.83 and petitioners here contend that for 1962 they are entitled to deduct their full prorata share of this loss, i.e., $31,304.03. They argue that the adjusted basis for Borg Steel's indebtedness to them must be computed by including the $84,000 in notes for unpaid salary and the $105,000 note to the bank bearing their endorsements and secured, in part, by their property. Inclusion of the amount of either indebtedness would entitle petitioners to the disputed deduction.

Respondent contends that petitioners' 1962 deduction for Borg Steel's net operating loss should be limited under section 1374(c)(2) to $16,294.91 and the remainder should be disallowed. Petitioner's basis of $25,000 for their stock, both parties agree, must be reduced by the $23,859.07 deduction allowed petitioners for 1961, see Code, sec. 1376(b)(1), leaving an adjusted basis of $1,140.93 for the stock. See Code, sec. 1016(a)(18). Respondent contends that the remainder of $1,140.93, added to the $15,153.98 representing petitioner Joe E. Borg's cash loan (a total of $16,294.91) constitutes petitioners' total adjusted basis for their stock and the corporate indebtedness to them. Respondent would allow no basis for either the unpaid salary notes or the bank note in applying the "adjusted basis" limitation prescribed by section 1374(c)(2). We agree with respondent.

The salary notes arose under a written employment contract calling for Borg Steel to pay petitioner Joe E. Borg a salary of $36,000 per annum. Because of the corporation's unfavorable financial condition, he was paid no salary for the fiscal years ending July 31, 1960 and 1961. For the fiscal year ending July 31, 1962, he was paid $24,000. The corporation each year gave petitioner Joe E. Borg a note for his unpaid salary but made a notation on each note that it was given and accepted only as evidence of indebtedness for salary due and not as payment of such salary. Petitioners, as cash basis taxpayers, did not report any part of the unpaid salary as income in their returns for 1960, 1961,

and 1962, consistent with our decisions in *Virginia W. Stettinius Dudley*, 32 T.C. 564 (1959), affirmed per curiam 279 F. 2d 219 (C.A. 2, 1960); *Jay A. Williams*, 28 T.C. 1000 (1957); and *Robert J. Dial*, 24 T.C. 117 (1955). Although Borg Steel reported under the accrual method, it claimed no deductions for its liability for such unpaid salary consistent with Code section 267.

The term "adjusted basis" is not specially defined for the purposes of the section 1374(c) limitations on the deduction of net operating losses. We, therefore, look to the general Code provisions on basis. See *Byrne* v. *Cmmissioner*, 361 F. 2d 939, 942 (C.A. 7, 1966), affirming 45 T.C. 151 (1965); *Richard Lee Plowden*, 48 T.C. 666 (1967).

Section 1012 [4] provides the general rule that the "basis of property shall be the cost of such property." Petitioners cite Income Tax Regs., sec. 1.1012–1(a), which defines "cost" to mean the "amount paid" for property "in cash or other property." Relying on this regulation, petitioners argue that Joe E. Borg's services constitute "other property" which had value equal to the notes, and that the notes, therefore, had a basis equal to their face amounts.

But "cost" for the purposes of the Code ordinarily means cost to the taxpayer. *Detroit Edison Co.* v. *Commissioner*, 319 U.S. 98 (1943). Where a taxpayer has not previously reported, recognized, or even *realized* income, it cannot be said that he has a basis for a note evidencing his right to receive such income at some time in the future. That petitioner Joe E. Borg performed valuable services for Borg Steel is undeniable; however, the performance of services, involving neither the realization of taxable income nor a capital outlay, is not the kind of cost that would be shown in a cash receipts and disbursements system of income accounting. See, e.g., *Pounds* v. *United States*, 372 F. 2d 342, 351–352 (C.A. 5, 1967); *Alsop* v. *Commissioner*, 290 F. 2d 726 (C.A. 2, 1961), affirming on other grounds 34 T.C. 606 (1960); *Ernest W. Brown, Inc.*, 28 T.C. 682 (1957), affirmed per curiam 258 F. 2d 829 (C.A. 2, 1958). Since the services performed by petitioner Joe E. Borg had no cost within the meaning of section 1012, his notes for unpaid salary had a basis of zero and, therefore, added nothing to the adjusted basis for indebtedness for the purpose of computing the section 1374(c)(2) limitation on net operating loss deductions.

We find further support for our conclusion in the fact that allowing petitioners a deduction for the 1962 net operating loss by treating the

---

[4] SEC. 1012. BASIS OF PROPERTY—COST.

The basis of property shall be the cost of such property, except as otherwise provided in this subchapter and subchapters C (relating to corporate distributions and adjustments), K (relating to partners and partnerships), and P (relating to capital gains and losses). The cost of real property shall not include any amount in respect of real property taxes which are treated under section 164(d) as imposed on the taxpayer.

salary claim as indebtedness with a basis equal to the face amounts of the notes for purposes of the section 1374(c)(2) limitation would apparently require a double inclusion of the salary in petitioners' income in the year when paid, once as salary received under Code section 61, and again on account of the recovery of sums due on the notes in excess of their basis. See *Joe M. Smith*, 48 T.C. 872, 878–879 (1967). We do not think Congress intended subchapter S of the Code to produce such a result.

As to the bank loan "guaranteed" by petitioners, section 1374(c)(2)(B) allows a shareholder in an electing small business corporation to deduct a corporate net operating loss to the extent of the adjusted basis of "any indebtedness of the corporation *to the shareholder*." In *William H. Perry*, 47 T.C. 159 (1966), affd. 392 F. 2d 458 (C.A. 8, 1968), we held that until a shareholder who had guaranteed a corporate debt was called upon to pay on the guaranty, no debt existed for the purpose of section 1374(c)(2)(B). Petitioners' second argument presents similar facts.

In 1958, Borg Steel needed additional funds and as a separate entity it sought a loan from the bank. The loan was refused. As a condition to making the loan, the bank insisted that petitioners pledge and mortgage all of their oil and gas interests and other personal assets, assign individual life insurance policies and execute a personal endorsement on the note which in fact, petitioners contend, constituted petitioners comakers of the note and imposed upon them primary liability for payment thereof. Petitioners argue that as "a matter of law and by its express terms this obligation is more than the ordinary 'endorsement'; it is more than a guarantee; it is more than an unconditional and absolute guarantee of payment; it is in fact an agreement 'to be bound by all the provisions hereof and to assume and perform all the obligations therein contained *in like manner as the makers thereof*.'" On this ground petitioners would have us distinguish *William H. Perry, supra.*

Petitioners misconstrue our decision in *Perry*. The basis for our decision was not that the taxpayers' liability was secondary. Rather, it was that, under Missouri law, a guarantor does not have a debt due from the debtor until the guarantor performs on his contract of guaranty. "The statutory language plainly refers to a debt of the corporation which runs to the shareholder. There is nothing in the statutory wording, nor the regulations, nor the committee reports which warrants an inference that a shareholder's contract of guaranty with corporate creditors is tantamount to an 'indebtedness of the corporation to [him].'" *William H. Perry, supra* at 163.

Under the statutes and case law of Oklahoma it is apparent that petitioners were sureties rather than guarantors of the corporate note.

The Oklahoma statutes define a surety as one who "at the request of another, and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person, or hypothecates property as security therefor." Okla. Stat. Ann., tit. 15, sec. 371 (1966). An early Oklahoma case held that where the undertaking endorsed on a note was "For value received, I hereby guaranty the payment of the within note," waiving demand and protest, the endorsement was that of a surety rather than a guarantor. *Walter A. Wood Mow. & Reap. Co.* v. *Farnham,* 1 Okla. 375, 33 Pac. 867 (1893). The distinction between a surety and a guarantor does not aid petitioners, however, for, under Oklahoma law, no cause of action arises until the surety makes at least part payment on his undertaking. See Okla. Stat. Ann., tit. 15, secs. 381–382 (1966); *Miller* v. *National Surety Co.,* 159 Okla. 76, 14 P. 228 (1932); *Jones* v. *Nelson,* 156 Okla. 236, 10 P. 2d 408 (1932).

Borg Steel owed nothing to petitioners by reason of their endorsement, and it would continue to owe nothing to them until and unless they paid part or all of the obligation. "While the sum of money may be payable upon a contingency, yet in such case it becomes a debt only when the contingency has happended, the term 'debt' being opposed to 'liability' when used in the sense of an inchoate or contingent debt." *Gilman* v. *Commissioner,* 53 F. 2d 47, 50 (C.A. 8, 1931). Accord, *United States* v. *Virgin,* 230 F. 2d 880 (C.A. 5, 1956); *Brown-Rogers-Dixson Co.* v. *Commissioner,* 122 F. 2d 347 (C.A. 4, 1941). It follows that the sums borrowed by the corporation from the bank did not give rise to "indebtedness of the corporation to the shareholder" and cannot be used in computing petitioners' allowable portion of the corporate net operating loss.

In view of certain concessions made by respondent,

*Decision will be entered under Rule 50.*