George W. Wise and Lu Celia Wise v. Commissioner.
Wise v. Commissioner
Docket No. 3569-67.
United States Tax Court
T.C. Memo 1971-38; 1971 Tax Ct. Memo LEXIS 295; 30 T.C.M. (CCH) 169; T.C.M. (RIA) 71038; February 24, 1971, Filed *295 Held, petitioners' share of the net operating loss of a small business corporation limited to the adjusted basis in their stock, as determined by the Commissioner; held further, petitioners are not allowed an adjusted basis in an indebtedness owed by the corporation for purposes of computing their share of the net operating loss, since being on the cash basis, they had not reported any part of such debt as income, and did not have a basis therein. Held further, due to lack of proof no deduction is allowable for depreciation or operating expenses of an automobile alleged to have been used in petitioner-husband's insurance business. Held further, medical expense deduction adjusted. Held further, petitioners are liable for addition to tax under sec 6651(a), I.R.C. 1954, for delinquent filing. No reasonable cause for delay shown. Charles C. Dunn, 1954 Utica Square, Tulsa, Okla., for the petitioners. F. Timothy Nicholls, for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined a deficiency in petitioner's Federal income tax for the year 1964 in the amount of $2,697.34. He also determined an addition to tax for the late filing of *296 petitioners' 1964 Federal income tax return in the amount of $74.06. There are four issues to be decided. First, is whether petitioners' deduction of Lu Celia's pro rata share of a small 170 business corporation's net operating loss should be limited to $19.66 - the amount determined by the Commissioner to be her adjusted basis in her share of the corporation's stock. Second, is whether George operated and maintained, in his business, an automobile, so as to allow petitioners to deduct depreciation and operating expense deductions therefor. Third, are petitioners liable for an addition to tax for the late filing of their 1964 return? Fourth, did the petitioners overstate their medical expense deduction? [1]
Findings of Fact Some of the facts have been stipulated. The stipulation and the exhibits attached thereto are incorporated herein by this reference. Petitioners, George W. Wise and Lu Celia Wise, were residents of Tulsa, Oklahoma at the time their petition was filed herein. They filed a joint 1964 Federal income tax return with the district director of *297 internal revenue, Oklahoma City, Oklahoma on May 24, 1965. In May of 1959, Lu Celia began operation of a proprietorship, known as Oil Originals by Lu Celia Wise, which continued operations until March 18, 1963. Oil Originals by Lu Celia, Inc. (hereinafter referred to as the corporation), was incorporated in Oklahoma on March 17, 1963, and chartered to engage in the business of manufacturing, fabricating, distributing, and selling executive gifts and associated products pertaining to the oil and gas industry. The corporation used a fiscal year ending February 28, and an accrual method of accounting for Federal income tax purposes. On March 18, 1963, Lu Celia transferred all existing assets and outstanding liabilities of the proprietorship to the corporation in a tax-free exchange pursuant to the terms of section 351, Internal Revenue Code of 1954[2] *298 Immediately after consummation of the tax-free exchange on March 18, 1963, Lu Celia owned 25,500 shares of the corporation's 28,500 outstanding shares of capital stock. During the fiscal year ending February 28, 1964, Lu Celia was the president, treasurer and general manager of the corporation as well as its controlling shareholder. As of March 18, 1963, the following entries were made in Oil Originals by Lu Celia, Inc's general journal and posted to the individual ledger accounts: Boulder Bank & Trust
$ 304.76
Accounts receivable
723.43
Mdse. for manufacturer's representative
792.00
Inventory in process
500.00
Furniture & equipment
539.96
Vehicles
1,000.00
Molds, dies & tooling
9,055.40
Patent and patent application, market testing, goodwill
26,992.67
Incorporation expense
358.00
National Bank of Tulsa - note payable
$ 600.00
Boulder State Bank - note payable
2,100.00
Accounts payable
2,057.45
Accounts payable - office
1,400.00
Capital stock, issued and outstanding
28,500.00
L. Wise 25,500 shares
A. Gisler 500 shares
D. Blue 2,500 shares
Contributed surplus
5,608.77 $40,266.22
$40,266.22 For its fiscal year ending February 28, 1964, the corporation made a timely and valid election under section 1372 to be treated as a small business corporation for Federal income tax purposes. For that fiscal year the corporation sustained a net operating loss. On their joint 1964 Federal income tax return, the petitioners deducted $12,003.60 as Lu Celia's pro rata share *299 of the net operating loss sustained by the corporation for its fiscal year ending February 28, 1964. The petitioners have always used the 171 calendar year and cash basis method of accounting for Federal income tax purposes. On February 28, 1964, the corporation was indebted to Lu Celia in the amount of $2,021.08 for salary due her for fiscal year ended February 28, 1964. None of said amount had been reported by Lu Celia prior to the taxable year 1964. Lu Celia had a basis of $304.76 in the cash in bank credited on March 18, 1963, in the Boulder Bank & Trust to the account of the corporation. She had a basis of $358 in the "Incorporation Expense" recorded on the books of the corporation, and had a basis of $1,363.58 in the "Inventory In Process" which she transferred on March 18, 1963 to the corporation in exchange for stock of the corporation. Lu Celia had a basis of $875.73 in the "Furniture & Equipment" which she transferred to the corporation in exchange for stock of the corporation. She also exchanged a 1958 Dodge automobile for stock of the corporation. As of the close of their taxable year 1962, the petitioners had been allowed depreciation deductions totaling $2,443.50 for *300 the 1958 Dodge automobile which George used in his insurance business. On March 18, 1963, the unrecovered cost or adjusted basis of the 1958 Dodge automobile was $271.50. In 1960, Lu Celia purchased for her proprietorship, "Equipment & Dies" for an alleged cost of $3,190 and claimed a depreciation deduction of $1,063.33 on these assets for that year. In 1961, the cost and useful life of these assets were adjusted and for 1961, 1962, and 1963, the petitioners claimed depreciation deductions totaling $523.13. The petitioners did not seek to depreciate the cost of a patent on any of their individual Federal income tax returns for the taxable years 1959 through 1963. On their 1961 and 1962 Federal income tax returns, ordinary expense deductions totaling $245 were claimed by the petitioners for "Patent Expense" incurred in the operation of Mrs. Wise's proprietorship. On their 1961 and 1962 Federal income tax returns, ordinary expense deductions totaling $457.38 were claimed by the petitioners for "Marketing" incurred in the operation of Lu Celia's proprietorship. As part of the consideration to Lu Celia in the March 18, 1963 tax-free exchange, the corporation assumed liabilities of Lu *301 Celia, or acquired from her property subject to a liability in the amount of $4,757.45. During 1964, George was primarily employed as an engineer. In 1964, he also was engaged in the business of selling general insurance. In conducting his insurance business he drove a 1958 Dodge automobile. George kept no record as to the number of miles he drove in 1964 in conducting his insurance business. The only evidence as to the claimed business usage in 1964 of the 1958 Dodge automobile is uncorroborated estimates by him as to the number of miles he drove on weekdays and weekends while conducting his insurance business. Opinion As heretofore stated, there are four issues to be decided. The extent of Lu Celia's share of the net operating loss of a small business corporation; whether George operated and maintained an automobile in his business so as to allow the petitioners a deduction for depreciation and operating expenses thereon; whether the petitioners negligently filed their 1964 Federal tax return beyond the date prescribed; and whether they overstated their medical expense deduction. We preface our decision herein with the following comment. Our task has been made no easier due to the *302 failure of petitioners to submit briefs or substantial evidence in support of their position. In fact, the only evidence presented, aside from petitioners' testimony, was the general ledger for the corporation, a copy of the minutes of the first stockholders meeting, a copy of the stock subscription agreement, and several schedules showing amounts expended, the date, the payee and an all too brief explanation thereof. The guilding principle herein has oft been stated. The Commissioner's determination is presumed to be correct and the burden is on the petitioners to prove the contrary. Rule 32, Tax Court Rules of Practice; Welch v. Helvering, 290 U.S. 111 (1933); Helvering v. Taylor, 293 U.S. 507 (1935). The Commissioner determined that a portion of the net operating loss sustained by the corporation for fiscal year ended February 28, 1964 should be disallowed, thereby reducing Lu Celia's pro rata share thereof. In accordance with section 1374(c)(2)(A)(B), [3]172 it was determined that petitioners' deduction should be further reduced to the sum of $19.16 (the adjusted basis of her stock as of February 28, 1964) and $2,021.08 (the indebtedness allegedly owed to Lu Celia as of February *303 28, 1964.) [4] *304 The question for decision first is whether or not petitioners' pro rata share of the net operating loss is properly limited to $19.66. In arriving at his eventual determination, the Commissioner made numerous preliminary inquiries in regard to the basis of the various assets and liabilities reflected on the books *305 of the corporation as of March 18, 1963, for which Lu Celia had received her stock in the corporation. Applying the pertinent basis provisions of the Code to the various items, the Commissioner arrived at the following values: Adjusted
Asset
Basis
Liability
Amount
Cash in bank
$ 304.76
National Bank of Tulsa
$ 600.00
Accounts receivable
Boulder State Bank
2,100.00
Merchandise for manufacturer's repre- sentative
Accounts payable
2,057.45
Inventory in process
1,363.58
Furniture and equipment
875.73
Vehicles
271.50
Molds, dies and tooling
1,603.54
Patent and patent application, market testing, goodwill
Incorporation expense 358.00 $4,777.11
$4,757.45 As to the various items, the Commissioner accepted the figures for cash in bank and "Incorporation Expense" and allowed a basis higher than that claimed for "Inventory in Process" and for "Furniture & Equipment" on the corporation's books. However, he determined that "Accounts Receivable" and "Mdse. for Manufacturer's Representative" had a zero basis rather than that appearing on the corporation's books of $723.43 and $792, respectively. Petitioners presented no evidence that bears on these two items. Further, since petitioners were cash basis taxpayers, it is apparent *306 that the $723.43 of accounts receivable had not been included in their prior year's income, and so could not afford Lu Celia a basis to be carried over to her stock. P.A. Birren & Son v. Commissioner 116 F. 2d 718 (C.A. 7, 1940), affirming a Memorandum Opinion of this Court. Therefore, the Commissioner's determination is sustained. The item listed on the corporation's books under "Vehicles" is a 1958 Dodge automobile. The Commissioner determined that Lu Celia had an adjusted basis of only $271.50 in this asset when she exchanged it for stock. Petitioners' tax returns disclose a cost figure of $2,715 for the automobile, purchased in 1958. At the close of their taxable year 1962, the petitioners had been allowed depreciation deductions totaling $2,443.50 for the 1958 Dodge which George 173 claims he used in his insurance business. The Commissioner treated the unrecovered cost of $271.50 as Lu Celia's adjusted basis in the Dodge on March 18, 1963. We sustain his determination in the absence of proof to the contrary. The next item is the Commissioner's determination with respect to the item "Molds, Dies & Tooling." His position is that Lu Celia had an adjusted basis of $1,603.54 in the *307 "Molds, Dies & Tooling" which she exchanged for stock. Petitioners' 1960 tax return and specifically Schedule C-1 thereof, pertaining to her proprietorship, shows a purchase in 1960 of "Equipment & Dies" for $3,190 and a depreciation deduction of $1,063.33 for that year. However, for the taxable year 1961, it appears that the petitioners adjusted the cost and useful life of these assets and claimed depreciation deductions totaling $523.13 for the taxable years 1961 through 1963. By deducting the total depreciation claimed by the petitioners on these assets for the years 1960 through 1963 ($1,586.46) from the $3,190 originally stated as the cost, the Commissioner arrived at an adjusted basis of $1,603.54 to Lu Celia on March 18, 1963. This adjusted basis computed and allowed by the Commissioner is in excess of the adjusted basis ($1,104.37) which results if the figures used are those the petitioners show on their 1963 tax return as the cost ($1,860) and total allowed depreciation ($755.63) of these assets. We come next to the item "Patent and Patent Application, Market Testing, Goodwill," which was given a value of $26,992.67 on the corporation's books. With regard to the alleged patent, *308 petitioners have presented no evidence of Lu Celia's adjusted basis in any patent at March 18, 1963. Further, the existence of any patent is doubtful since the petitioners never sought to depreciate the cost of a patent on any of their returns for 1959 through 1963. The evidence pertaining to "Patent Application" and "Market Testing" is to the effect that if Lu Celia ever incurred any expenditures in operating her proprietorship, which might have constituted the basis of either item, the petitioners deducted these expenses annually on their returns. Thus, for 1961 and 1962, ordinary expense deductions totaling $245 were claimed for "Patent Expense" and $457.38 for "Marketing." As to goodwill, the petitioners have produced no evidence to show that Lu Celia had a basis in "Goodwill" at the time the proprietorship's assets were exchanged for stock. There is no showing that the proprietorship maintained such an account on its books, or had any other basis for claiming such an item. As to both of the above classes of assets, we again uphold the Commissioner's determination in the absence of competent proof to the contrary. Thus the Commissioner determined that on March 18, 1963, Lu Celia *309 had a basis of $4,777.11 in the assets which she transferred to the corporation in exchange for its capital stock. The Commissioner deducted from this amount those liabilities of Lu Celia which the corporation had agreed to assume ($4,757.45), and arrived at the net figure of $19.66, which he ascertained to be the adjusted basis in her stock as of March 18, 1963. Since the petitioners have not shown that between March 18, 1963 and February 28, 1964, Lu Celia made any further contributions to capital, which would increase her stock basis, the Commissioner concluded that her adjusted stock basis, at the close of the corporation's first taxable year, was $19.66. Accordingly, we sustain the Commissioner's determinations discussed above, on the basis of the presumption of correctness attaching to them. The second aspect of this issue, the amount of petitioners' share of the corporation's net operating loss, is the question of the basis, if any, which Lu Celia had in the $2,021.08 owed her by the corporation. The identical issue was involved in the case of Joe E. Borg, 50 T.C. 257 (1968). The only factual difference, which is not material, is that in Borg, the taxpayers were given written *310 evidences of indebtedness for unpaid salaries, whereas here the indebtedness was represented by an open account. We held in Joe E. Borg, supra, that the taxpayers could not consider such indebtedness as available for the limitations of section 1374(c)(2). We stated there, that with cash basis taxpayers, who had properly not reported any of the unpaid salary on their returns: Where a taxpayer has not previously reported, recognized, or even realized income, it cannot be said that he has a basis for a note evidencing his right to receive such income at some time in the future. * * * the performance of services, involving neither the realization of taxable income nor a capital outlay, is not the kind of cost that would be shown in a cash receipts and disbursements system of income accounting. * * * Since the services performed by petitioner Joe E. Borg had no cost within the meaning of section 1012, his notes for unpaid salary had a basis of zero and, therefore, added 174 nothing to the adjusted basis for indebtedness for the purpose of computing the section 1374(c)(2) limitation on net operating loss deductions. We find further support for our conclusion in the fact that allowing petitioners *311 a deduction for the 1962 net operating loss by treating the salary claim as indebtedness with a basis equal to the face amounts of the notes for purposes of the section 1374(c)(2) limitation would apparently require a double inclusion of the salary in petitioners' income in the year when paid, once as salary received under Code section 61, and again on account of the recovery of sums due on the notes in excess of their basis. See Joe M. Smith, 48 T.C. 872, 878-879 (1967). We do not think Congress intended subchapter S of the Code to produce such a result. Joe E. Borg, supra, at 263, 264. We find no difference in the case herein, and hold that Lu Celia had no basis in the sum owed by the corporation on account of her services thereto. The next issue concerns the deduction for automobile depreciation and operating expenses. The automobile involved is the 1958 Dodge described above, which was alleged to have been used by George in his general insurance business. Petitioners claimed $748.45 for depreciation on their 1964 tax return. However, this amount relates to a 1963 Oldsmobile which was used solely by Lu Celia. We have no evidence which would properly allow George to claim depreciation *312 for the use of that automobile in his insurance business. Sec. 167(a); sec. 1.167(a)-1, Income Tax Regs. Petitioners also claimed an operating expense deduction of $583.72 representing 90 percent of the total $648.58 expended by George in operating and maintaining an automobile. The Commissioner does not place in issue the amount of the expenses incurred, rather, he takes issue with petitioners' contention that George incurred 90 percent of the total expenses. Petitioners presented no evidence of any sort as to the miles driven by George and he kept no record thereof. The only evidence is George's own estimates. Such proof is not sufficient to sustain petitioners' burden. We come now to the addition to tax of $74.06, under section 6651(a), for delinquent filing. The return discloses it was received on May 24, 1965. As to the original penalty asserted of $36.64, petitioners have not met their burden of showing that any delay was due to reasonable cause. Accordingly, the Commissioner's determination is sustained. Ivan D. Pomeroy, 54 T.C. 1716 (1970); Lawrence Sunbrock, 48 T.C. 55 (1967). As to the increase of the penalty, there is evidence of record to show that the return was delinquently *313 filed. We think this fact is adequate to place the burden on the petitioners to show that any delay was due to reasonable cause. No evidence bearing on this point has been introduced and the total penalty is also sustained. Decision will be entered under Rule 50. Footnotes
1. This issue is dependent on a determination of the preceding issues and its resolution will flow from a computation under Rule 50.↩
2. All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.
3. SEC. 1374(c)(2). Limitation. - A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of - (A) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation (or, in respect of stock sold or otherwise disposed of during such taxable year, as of the day before the day of such sale or other disposition), and (B) the adjusted basis (determined without regard to any adjustment under section 1376↩ for the taxable year) of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation (or, if the shareholder is not a shareholder as of the close of such taxable year, as of the close of the last day in such taxable year on which the shareholder was a shareholder in the corporation). 4. Subsequent to the issuance of the notice of deficiency, however, the Commissioner filed an amendment to his answer wherein he asked the Court to limit the petitioners' deduction to $19.16, it being his position that Lu Celia had no basis in the $2,021.08 indebtedness at the close of the corporation's first fiscal year. The question of whether there was a basis in the indebtedness will be treated later on in this opinion. Because of his amended position, the Commissioner asked for an increase in the deficiency and addition to the tax. Since the time this case was tried, a computation error favorable to the petitioners was discovered, hence, the Commissioner concedes that on February 28, 1964, the adjusted basis of Mrs. Wise's stock of Oil Originals was $19.66 rather than $19.16 as set forth in the notice of deficiency. Regardless of who has the burden of proof, we think that on this record the existence of the $2,021.08 indebtedness has been established and the basic issue is one of law, i.e. whether the indebtedness can be included in Lu Celia's basis.