KURT PETRICH, ET AL, [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Petrich v. Commissioner
Docket Nos. 3989-78, 3990-78, 3991-78.
United States Tax Court
T.C. Memo 1980-161; 1980 Tax Ct. Memo LEXIS 431; 40 T.C.M. (CCH) 303; T.C.M. (RIA) 80161; May 5, 1980, Filed Jesse H. Petrich, for the petitioners. Matthew W. Stanley, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner, in his statutory notices of deficiency, determined the following deficiencies in Federal income tax against petitioners: *433 Docket No.
Petitioner
Taxable Year
Deficiency in Tax
3989-78
Kurt Petrich
1974
$ 432.45
1975
2,206.38
3990-78
William A. Petrich
and Resa Petrich
1975
$ 514.20
1976
1,466.74
3991-78
Henriette Owens Ori
1974
$1,962.81
Due to concessions, one issue remains to be decided: whether petitioners are entitled to the net operating loss carryovers that they claimed for the years in issue, which depends entirely on the amount of the casualty loss which was sustained when a fishing vessel owned by petitioners was damaged on December 4, 1972. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts awnd the exhibits attached thereto are incorporated by this reference. Petitioner Kurt Petrich (hereinafter Kurt) filed his Federal income tax returns for the taxable years 1974 and 1975 with the Internal Revenue Service Center, Ogden, Utah. Petitioners William A. Petrich (hereinafter William) and Resa Petrich filed joint Federal income tax returns for the taxable years 1975 and 1976 with the Internal Revenue Service Center, Ogden, Utah. Petitioner Henriette Owens Ori (hereinafter Henriette) filed a joint Federal *434 income tax return for the taxable year 1974 with her former husband. All of the petitioners resided in North Bend, Washington, when they filed their petitions in this proceeding. Resa Petrich is a party to this action only because she filed a joint return for the taxable years 1975 and 1976 with her husband. Therefore, the term "petitioners" hereinafter will refer to Kurt, William, and Henriette. On June 2, 1967, petitioners purchased a fishing vessel, the Hoquiam, for $6,500. At that time, the Hoquiam was licensed for mackerel fishing only. Petitioners desired to rebuild and outfit the Hoquiam so that it could be used to catch shrimp and crab off the coast of Alaska. However, petitioners lacked the experience necessary to rebuild the vessel and to operate the vessel as a fishing boat. Captain Jesse H. Petrich, who is the father of Kurt, William, and Henriette, possessed the necessary experience, and petitioners asked him to rebuild the Hoquiam and teach them how to operate the vessel for the purpose of fishing. Petitioners wanted to compensate their father for his efforts and intended to do so out of the profits of their fishing operations. To memorialize *435 their intent, Kurt, William, and Henriette entered into the following Memorandum of Agreement on June 27, 1969: On this day, hereinunder dated, we the undersigned: [Henriette, William, and Kurt], do make and covenant the following agreement with Jesse H. Petrich, our father. (1) We are the legal and registered owners of the O/S Hoquiam, Official #96404. (2) We have executed an irrevocable Power of Attorney to our father regarding our interests in the O/S Hoquiam. (3) It is recognized and agreed that the O/S Hoquiam is in need of rebuilding and conversion and outfitting for the purposes of fishing and processing.
(4) It is recognized and agreed the costs of the above, and the time to accomplish same will be considerable and not now estimable in dollar figures or time. (5) We therefore agree that: in return for our father directing and assisting us in developing the O/S Hoquiam; teaching us to fish and process the same; and to operate the vessel; we do give unto our father, Jesse H. Petrich, a sum equal to (25%) twenty-five percent of the net profits of the vessel from the time we commence operations on our own. While Captain Jesse Petrich worked on the Hoquiam, *436 he and his wife did receive some financial support from petitioners, but that amount is indeterminable. By May 14, 1971, the Hoquiam had been completely rebuilt by Captain Petrich. In addition to the structural repairs which had been made, the vessel had been outfitted with a new main diesel generator, engine, propeller, crab pots, hydraulic pumps, compressors, brine tanks, kitchen, electronic navigation gear, and other equipment. Petitioners' out-of-pocket expenses for rebuilding the Hoquiam were $29,135. Therefore, as of May 14, 1971, petitioners had a cost basis of $35,635 in the vessel. On May 14, 1971, the Hoquiam departed for Alaska. The voyage was undertaken to accomplish the second part of Captain Petrich's task, that of teaching petitioners how to operate the vessel, fish, and process the catch. After fulfilling the purpose of the voyage, the Hoquiam left Ketchikan, Alaska, on December 3, 1972, bound for Seattle, Washington. During the preparations for departure, a portion of the hauling gear fell, causing a large leak in the vessel's outer hull. The damage was discovered on December 4, 1972, when heavy seas caused water to seep into the vessel; *437 the Hoquiam was forced to come ashore in British Columbia. The vessel was inoperable and ultimately was abandoned. On December 27, 1972, Captain Jesse Petrich reported the casualty to the United States Coast Guard as a total loss. Petitioners were not in the trade or business of fishing during 1971 or 1972. The Hoquiam was never placed in service by petitioners as an asset used in their trade or business or for the production of income. On their Federal income tax returns for the taxable year 1972, petitioners each claimed a casualty loss of $26,100 resulting from the loss of the Hoquiam, sharing equally in the claimed loss of $78,300. The Commissioner determined that petitioners' adjusted basis in the Hoquiam for purposes of allowing a casualty loss deduction under section 165, Internal Revenue Code of 1954, [2] was $33,997. The amount so allowed represents petitioners' cost basis of $35,635 as of May 14, 1971, less allowable depreciation of $854.50 for 1971 and $783.29 for 1972. One-third of the adjusted basis was allocated to each petitioner as a casualty loss.Petitioners' net operating loss carryovers to the years in issue were adjusted *438 accordingly. In this proceeding, petitioners have claimed that the total amount of the casualty loss was $107,275 rather than $78,300 as claimed on their Federal income tax returns for the taxable year 1972. OPINION Petitioners purchased a fishing vessel, the Hoquiam, for $6,500. Their father, Captain Jesse Petrich, agreed to rebuild the vessel, teach petitioners how to operate her, teach them how to catch shrimp and crab, and teach them how to process their catch. In exchange for those valuable services, petitioners agreed to give their father 25 percent of the net profits earned by them after they began to operate the vessel themselves. By May 14, 1971, Captain Jesse Petrich had rebuilt the Hoquiam. By December 3, 1972, he had taken the vessel and petitioners into Alaskan waters and had taught his children how to operate the vessel, how to catch shrimp and crab, and how to process their catch. While preparing to return home for the winter, a portion of the Hoquiam's hauling gear fell, causing a large leak in the vessel's outer hull. The damage was discovered on December 4, 1972, when *439 heavy seas caused water to seep into the Hoquiam. She came ashore in British Columbia and was a total loss. Section 165(a) allows the deduction of losses sustained. Petitioners sustained a loss in 1972 when the Hoquiam was damaged beyond repair. By the date of the casualty, petitioners had finished their training voyage and were preparing to return to Seattle, but they had not yet entered the trade or business of fishing. Their loss is deductible under section 165(c)(3). The amount of their loss is measured under section 165(b) as their adjusted basis in the Hoquiam. Petitioners contend that their adjusted basis in the Hoquiam was equal to its original cost ($6,500) plus the cost of improvements ($29,135) plus the value of services rendered by Captain Jesse Petrich from June 27, 1969, to May 14, 1971, ($53,640) plus the value of services rendered by Captain Jesse Petrich from May 14, 1971, to December 3, 1972 ($18,000). Respondent contends that petitioners' adjusted basis in the Hoquiam was equal to its original cost ($6,500) plus the cost of improvements ($29,135) less allowable depreciation for the taxable years 1971 ($854.50) and 1972 ($783.29). *440 Section 1012 provides that the basis of property shall be its cost, and section 1016 provides certain adjustments to basis. For the years in issue, the cash receipts and disbursements method of accounting was the proper method for petitioners. [3] Therefore, petitioners were entitled to increase their basis in the Hoquiam by amounts actually paid to Captain Jesse Petrich in connection with his work on the vessel between June 27, 1969, and May 14, 1971. Petitioners did not prove that they actually paid for those services, but rather convinced the Court that they intended to compensate their father out of future profits. No profits materialized and no payments were made.The facts awre no different regarding the services rendered by Captain Jesse Petrich as Master of the Hoquiam on her voyage to Alaska. Petitioners did not pay him for those services, but intended to pay him in the future. Because petitioners never actually paid their father for his services, they cannot increase their basis in the Hoquiam. Borg v. Commissioner,50 T.C. 257, 263 (1968). We have found that petitioners provided some financial support to Captain Jesse Petrich while he worked *441 on the Hoquiam, but petitioners were unable to estimate the amount so paid when asked at trial. Since there is no way for us to estimate the amount so paid, this financial support rendered by petitioners cannot increase their basis in the Hoquiam. Petitioners contend that the foregoing result is incorrect because of existing maritime law. We disagree. The arguments made and the cases cited by petitioners, if construed most favorably to them, would prove only that Captain Jesse Petrich possessed a lien against the Hoquiam for the value of his services. The existence of a debt, even when secured by a lien, does not entitle a cash basis debtor to treat the item as paid *442 for Federal income tax purposes. The bottom line in this case is that petitioners never actually paid their father for his services. See sec. 1.461-1(a)(1), Income Tax Regs.
Petitioners argue that their basis in the Hoquiam should not be adjusted for depreciawtion for the taxable years 1971 and 1972 because they did not use the vessel in their trade or business during those years. We agree. Section 1.167(a)-10(b), Income Tax Regs., provides in part as follows: (b) The period for depreciation of an asset shall begin when the asset is placed in service and shall end when the asset is retired from service.* * * The Hoquiam was never placed in service by petitioners as an asset used in their trade or business or for the production of income. We have found that petitioners were not in the trade or business of fishing at any time prior to the loss of the Hoquiam. Also, due to the complete lack of a profit motive for the voyage to Alaska, the Hoquiam was not ever held for the production of income. Therefore, the vessel was not property on which depreciation deductions were allowable for the taxable years 1971 and 1972, and respondent should not have adjusted petitioners' *443 basis in the Hoquiam pursuant to section 1016(a) (2). [4]
The hardship worked on petitioners by the loss of the Hoquiam is plain. We also understand the feeling on petitioners' part that the years of hard work by Captain Jesse Petrich deserve some recompense. Unfortunately, relief under the Federal income tax laws is not forthcoming. The Congress has drafted a complex and precise taxing statute, and we are not at liberty here to ignore the result that it mandates. To reflect the foregoing and concessions made prior to trial, Decisions will be entered under Rule 155. Footnotes
1. The following cases have been consolidated for trial, brief and opinion: Kurt Petrich, docket No. 3989-78; William A. Petrich and Resa Petrich, docket No. 3990-78; and Henriette Owens Ori, docket No. 3991-78.↩
2. All section references are to the Internal Revenue Code of 1954, as amended.↩
3. Had petitioners been in the trade or business of fishing, it could be argued that petitioners should have been on the accrual method of accounting. See sec. 1.446-1(c)(2), Income Tax Regs. However, under the facts of this case, it is clear that petitioners were not in the trade or business of fishing at any time prior to the casualty, but rather intended to enter that trade or business as soon as they had learned the business from their father and could operate the Hoquiam↩ by themselves.
4. Cooper v. Commissioner,T.C. Memo 1975-320, affd. per curiam 542 F.2d 599↩ (2d Cir. 1976).