Malcolm NEAL (deceased) and Ruth E. Neal, Widow, Ruth E. Neal, Executrix of the Estate of Malcolm Neal, deceased, 646 Sartori Avenue, Torrance, California, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 68–1248.

United States District Court, C. D. California.

March 11, 1970.

F. Edward Little, Los Angeles, Cal., for plaintiffs.

Wm. Matthew Byrne, Jr., U. S. Atty., Charles H. Magnuson, Asst. U. S. Atty., Chief, Tax Division, Mason C. Lewis, Asst. U. S. Atty., Los Angeles, Cal., for United States of America.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HALL, District Judge.

Upon consideration of the evidence introduced by the parties in this proceeding, both oral and documentary, in addition to the pleadings and other documents filed in this matter, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

*Introductory Statement*

I

The sole issue in this case involves the application of Section 1374(c) (2)

of the Internal Revenue Code of 1954 to an operating loss sustained by Neal's Die Shop, Inc., in 1963

## II

Neal's Die Shop, Inc., is a corporation which, in 1958, elected to be taxed as a "small business corporation." [1] If a small business corporation should sustain a net loss in its business operations for any particular year, the loss is available as a deduction by the shareholders (rather than the corporation) on their individual income tax returns. The Code provides, however, that this deduction is to be limited by the adjusted basis of the shareholders' stock in the corporation plus the adjusted basis of any indebtedness of the corporation to the shareholders as of the close of the taxable year in which the loss is sustained.

## III

Plaintiffs' adjusted basis in their stock, was $9,113.39. The Commissioner of Internal Revenue sought to limit plaintiffs' deduction for the corporation's net operating loss to this figure. Plaintiffs, on the other hand, contend that the corporation was indebted to them in 1963 in the amount of $93,000 by virtue of an April 29, 1963 loan transaction with J. Talcott Western, Inc. ("Talcott loan"), and therefore, the deduction for the corporation's net operating loss should have been allowed to the full extent of the $83,301.57 sustained in 1963.

## IV

Whether the corporation was indebted to plaintiffs as the result of the Talcott loan is the only question properly before the Court in this matter.

## V

Because of the availability of carry-back and carry-forward provisions in the Internal Revenue Code, the taxable years of 1960 through 1964 are affected, and claims for refund with respect to those years properly were filed by plaintiffs. Upon the expiration of more than six months without any formal statutory notices of disallowance, plaintiffs, on July 30, 1968, timely instituted this action for the recovery of income taxes paid of $19,504.58.

## VI

On December 30, 1968, defendant timely filed its Answer in this matter. An amended answer setting forth a counter-claim for $749.79 of assessed but unpaid interest properly was filed with this Court on January 5, 1970.

*The corporation as a viable entity*

## VII

Plaintiffs are the sole shareholders of Neal's Die Shop, Inc. This firm began operations in 1951 as a sole proprietorship and was incorporated in 1953. In 1958 the corporation filed a timely election to be taxed as a small business corporation and was properly classifiable as such through the taxable years here in issue.

## VIII

Although Neal's Die Shop, Inc. sustained a net operating loss of $83,301.57 in its taxable year ended May 31, 1963, the firm was by no means a mere shadow of an organization. Gross receipts for this year amounted to $669,722.02 and the corporation reflected $179,442.41 in total assets.

## IX

As far as Mr. Neal was concerned, as president he received a salary from the corporation in the amount of $22,500.00. Mr. Neal also had an initial investment in the capital stock of the corporation of $7,500.00.

*The Talcott loan*

## X

On April 29, 1963, Neal's Die Shop, Inc., negotiated a $93,000 loan from

1. One which has elected to be taxed under the provisions of Section 1371 et seq., of the Internal Revenue Code of 1954.

James Talcott Western, Inc., represented by a promissory note and an endorsement. The note was executed, "Neal's Die Shop, Malcolm B. Neal, President." The proceeds of the loan were to be used to supplement the corporation's operating capital.

### XI

Pursuant to standard procedures of James Talcott Western, Inc., an appraisal was made of certain corporate property, real and personal, which was to be subjected to a mortgage in favor of the creditor as security for the loan. In toto, the fair market value of the property so encumbered was well in excess of the principal amount of the loan. A subsequent independent appraisal revealed the following valuation of the corporate assets: Mills—$33,450; lathes—$23,050; drill presses—$6,110; grinders—$1,895; tooling and inspection equipment—$7,000; miscellaneous equipment—$42,525; office equipment—$1,500.

In addition to the personal property listed above in the total fair market value of in excess of $115,000, certain corporate real property was encumbered as part of the loan security.

### XII

Also pursuant to standard procedures of James Talcott Western, Inc., the personal endorsement of Mr. and Mrs. Malcolm B. Neal was required as a condition of granting the loan. This standard endorsement was worded in such a way so as to have the endorsers waive, among other things, "all right to require the holder to proceed against the maker or against any other person or to apply any security it holds or pursue any other remedy."

The effect of this endorsement was to permit Talcott to proceed directly against the individual guarantors as primarily liable joint obligors. Proceedings by the creditor in this case, however, never became necessary—against the maker, endorsers, or mortgaged property. At no time was the Talcott loan in default.

### XIII

Beginning with June 6, 1963, regular monthly installments of $2,583.33 were made by Neal's Die Shop, Inc. These payments continued through September, 1965, at which time the note was refinanced up to the present date.

### XIV

At no time were any payments on the Talcott note made by anyone other than Neal's Die Shop, Inc. Throughout the period of the loan's existence, the obligation appeared on the corporation's balance sheet as a loan from Talcott, and the interest expense properly was deducted from the corporation's gross income on its federal income tax returns. At no time was the Talcott loan ever reflected on the corporation's books as a loan from shareholders.

## CONCLUSIONS OF LAW

### The Statutory Limitation

### I

Section 1374(b) of the Internal Revenue Code of 1954 permits shareholders of a small business corporation to deduct on the individual income tax returns their proportionate shares of the corporation's net operating loss. The individual deduction allowance results in a situation very similar to that seen if the operating loss were sustained by a sole proprietorship or by a partnership. The significant distinction in tax treatment, however, results from the application of Section 1374(c) (2) which specifically describes the limitation of the individual's net operating loss deduction when derived from a small business corporation:

(2) *Limitation.*—A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of—

(A) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of the shareholder's stock in the elect-

ing small business corporation, determined as of the close of the taxable year of the corporation (or, in respect of stock sold or otherwise disposed of during such taxable year, as of the day before the day of such sale or other disposition), and

(B) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation (or, if the shareholder is not a shareholder as of the close of such taxable year, as of the close of the last day in such taxable year on which the shareholder was a shareholder in the corporation).

## II

The statutory language of Section 1374(c) (2) plainly refers to a debt of the corporation which runs to the shareholder. There is nothing in the statutory wording, nor the regulations, nor the committee reports which warrants an inference that a shareholder's contract of guaranty with corporate creditors is tantamount to an indebtedness of the corporation to him. Perry v. Commissioner, 47 T.C. 159 (1966).

## III

■ Neal's Die Shop, Inc. owed nothing to its shareholders by reason of their endorsement, and it continued to owe nothing to them until and unless they paid part or all of the obligation, which they never did. While a sum of money may be payable upon a contingency, it becomes a debt only when the contingency has happened, the term "debt" being opposed to "liability." The fact that the granting of the loan by the creditor to the corporation was expressly conditional upon the personal guaranty of the individual shareholders, to the extent that they became primarily liable to the creditor as co-makers, has no bearing upon the "indebtedness" contemplated by Section 1374(c) (2) (B).

Borg v. Commissioner, 50 T.C. 257 (1968); Raynor v. Commissioner, 50 T.C. 762 (1968).

## IV

■ If the shareholders are not called upon to make good their promise to the corporation's creditor, then they have not incurred any cost with respect to the loan. If funds are advanced on behalf of the corporation, then, in effect, the shareholder is in the same position as if an additional investment were made in the corporate enterprise. This is the context in which Congress meant to place a corporate *indebtedness* on the same plane as corporate stock with respect to the net operating loss pass-through. S.Rep. No. 1983, 85th Cong. 2d Sess. 1958–3 Cum.Bull. 922, 1141, U.S.Code Cong. & Admin.News 1958, p. 4791.

### *Business Structures as Taxable Entities*

## V

■ Above the conclusion demanded by the statutory context in this case is heard the claim that if Mr. Neal had continued to operate his business as a sole proprietorship, or even as a partnership, he would have been entitled to the full benefit of the loss. Sole proprietorships and partnerships, however, are not corporations and are not considered identical taxable entities under the Internal Revenue Code—even small business corporations. To whatever extent Congress intended to reduce tax considerations in the choice of the business structure by enacting the 1958 amendment, it aimed far short of eliminating all distinctions. The specific limitation on the shareholders' ability to use the corporation's net operating loss as a deduction on the individual income tax returns expressly bespeaks of the fact that significant distinctions do remain. Certainly Congress was not unaware that the shareholders of small business corporations, like partners, would be the ones ultimately to bear the tax burden of the business operations. Any further erosion of distinc-

tions between the various taxable entities should be left to Congress' modification of the Internal Revenue Code's relatively intricate provisions in this regard. Plowden v. Commissioner, 48 T.C. 666 (1967).

## VI

This Court has jurisdiction over the subject matter of the action and venue is proper. 26 U.S.C. § 7422(a); 28 U.S.C. §§ 1346(a) (1), 1346(c), 1402.

## VII

The complaint of plaintiffs in this action shall be dismissed, and defendant's counterclaim shall be granted.