E. J. FRANKEL AND Z. T. FRANKEL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT
SEYMOUR GOLDEN AND DORIS GOLDEN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 8761–72, 9292–72. Filed December 10, 1973.

---

*H. Louis Katz, Mark H. Berliant,* and *Edwin T. Robinson,* for the petitioners in docket No. 8761–72.

Seymour Golden and Doris Golden, pro se in docket No. 9292–72.

*Brian J. Seery,* for the respondent.

### OPINION

DAWSON, *Judge:* In these consolidated cases, submitted pursuant to Rule 30, Tax Court Rules of Practice, the respondent determined the following deficiencies:

| Petitioners | Docket No. | Year | Amount |
|---|---|---|---|
| E. J. Frankel and Z. T. Frankel | 8761–72 | 1969 | $4,788.57 |
| Seymour Golden and Doris Golden | 9292–72 | 1969 | 2,302.00 |

The only question for decision is whether or not loans made by a partnership to a subchapter S corporation constitute an indebtedness within the meaning of section 1374(c) (2) (B), I.R.C. 1954.[1]

All of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference and are adopted as our findings. The facts relevant to our decision are set forth below.

E. J. Frankel and Z. T. Frankel are husband and wife who resided in Philadelphia, Pa., at the time their petition herein was filed. They filed a joint Federal income tax return with the Internal Revenue Service Center, Philadelphia, Pa., for the year 1969.

Seymour and Doris Golden are husband and wife who resided in Bala Cynwyd, Pa., at the time their petition herein was filed. They filed a joint Federal income tax return with the Internal Revenue Service Center, Philadelphia, Pa., for the 1969.

E. J. Frankel and Seymour Golden (herein referred to as petitioners) were two of the partners in a partnership known as Regency Apartments which owned "The Regency," an apartment building in Cincinnati, Ohio.

Chequers Restaurant, Inc. (herein called Chequers), was an electing small business corporation as defined in section 1371 of the Code. It owned and operated a restaurant in The Regency during 1969.

From its incorporation on November 1, 1967, through December 31, 1969, Frankel owned 20 percent of the issued and outstanding common stock of Chequers. The cost of this stock was $40,000. The total capitalization of Chequers was $200,000.

From its incorporation on November 1, 1967, through December 31, 1969, Golden owned 5 percent of the issued and outstanding common stock of Chequers. The cost of this stock was $10,000.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

During 1969 Frankel owned a 20-percent capital interest in the Regency Apartments partnership.

During 1969 Golden owned a 5-percent capital interest in the Regency Apartments partnership.

For the fiscal year ended October 31, 1968, Chequers reported an operating loss of $171,927.

For the fiscal year ended October 31, 1969, Chequers reported an operating loss of $121,049.

On November 1, 1968, the Regency Apartments partnership loaned $199,432 to Chequers.

On October 31, 1969, the Regency Apartments partnership loaned $34,718 to Chequers.

On his Federal income tax return for the year 1968, Frankel deducted $34,385 as his allocable portion of the total losses suffered by Chequers for the fiscal year ended October 31, 1968.

On his Federal income tax return for the year 1968, Golden deducted $8,596 as his allocable portion of the total losses suffered by Chequers for the fiscal year ended October 31, 1968.

On his Federal income tax return for the year 1969, Frankel deducted $24,210 as his allocable portion of the total losses suffered by Chequers for the fiscal year ended October 31, 1969.

On his Federal income tax return for the year 1969, Golden deducted $6,052 as his allocable portion of the total losses suffered by Chequers for the fiscal year ended October 31, 1969.

Both Frankel and Golden claimed losses on their 1969 Federal income tax returns on the ground that the loans made to Chequers by Regency Apartments constituted loans made by the individual partners of that partnership. Respondent disallowed the claimed losses to the extent of $18,595 for Frankel and $4,648 for Golden. The basis for such disallowance was that the loans made by Regency Apartments to Chequers are not an indebtedness of the corporation to the shareholders.

Section 1374 permits a net operating loss of an electing small business corporation to be taken as a deduction from the gross income of the shareholders. A shareholder is permitted to deduct from his gross income only his pro rata share of such loss. Section 1374(c)(2) establishes a limitation on such loss.[2] The deduction may not exceed the total of a shareholder's adjusted basis in the stock of the corporation and the adjusted basis of any indebtedness of the corporation to the shareholder.

[2] LIMITATION.—A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of—

(A) the adjusted basis * * * of the shareholder's stock in the electing small business corporation, * * *, and

(B) the adjusted basis * * * of any indebtedness of the corporation to the shareholder * * *

Petitioners argue that the partnership must be treated as an aggregate of its partners as individuals. Thus, they view the loans made by the partnership to the corporation as having been made by the partners in their individual capacities. Under this view the following computations would represent their loss limitation under section 1374(c) (2) :

|  | Frankel | Golden |
|---|---|---|
| Initial investment in subch. S corporation | $40, 000 | $10, 000 |
| Plus: Allocable share of 1968 loan | 39, 886 | 9, 971 |
| Summation of basis (1968) | 79, 886 | 19, 971 |
| Less: Allocable share of 1968 loss | 34, 385 | 8, 596 |
| Adjusted basis 1968 | 45, 501 | 11, 375 |
| Plus: Allocable share of 1968 loan | 6, 944 | 1, 736 |
| Summation of basis (1969) | 52, 445 | 13, 111 |
| Less: Allocable share of 1969 loss | 24, 210 | 6, 052 |
| Adjusted basis 1969 (available under sec. 1374 (c)(2)) | 28, 235 | 7, 059 |

Respondent contends that the shareholder-members of the partnership may not claim, for the purposes of section 1374, any portion of the loans made by the partnership to the corporation as theirs. It is respondent's view that Frankel may deduct from gross income in 1968 his allocable share of the corporation's 1968 net operating loss ($34,-385). This would give Frankel an adjusted basis of $5,615 which would be exhausted in 1969 by virtue of the 1969 net operating loss. Respondent would allow Golden to deduct $8,596 from gross income in 1968, which is his allocable share of the 1968 loss. With no further additions to basis Golden would be permitted to deduct only $1,404 as his share of the 1969 net operating loss.

The loans were made to the corporation by the partnership. A partnership may not be a shareholder in a subchapter S corporation. Sec. 1371(a) (2) ; sec. 1.1371-1(d), Income Tax Regs.[3]

Petitioners have not cited, and admit they are unable to find, any authority clearly holding that under section 1374(c) (2) (B) indebtedness to a partnership constitutes a debt to an individual. By analogy respondent argues that since stock owned by a partnership is not deemed owned by the partners, then an indebtedness to a partnership is not deemed owed to the individual partners for the purposes of section 1374(c) (2) (B).

The benefits of the operating loss passthrough under section 1374 are provided for *shareholders* in an electing small business corporation. The language of the statute refers to either a shareholder's stock or any indebtedness of the corporation to the shareholder.

---

[3] The Senate bill with respect to subch. S corporations, which was not enacted, would have allowed a partnership to own stock, counting each partner as a shareholder. S. Rept. No. 1622, 83d Cong., 2d Sess., p. 453 (1954).

Petitioners isolate the language "any indebtedness" and argue that any indebtedness to the shareholder in whatever form or manner incurred should be accounted for when computing the adjusted basis. From this premise they move to the position that the identical ownership interests as between the corporation and the shareholder necessarily require the conclusion that the indebtedness runs directly to the partners as shareholders.

In our opinion this argument overlooks the partnership, a vehicle chosen by petitioners for good and sufficient reasons. By design, there are definite differences between partnerships and subchapter S corporations. The original legislative proposals provide that electing corporations should be taxed exactly as partnerships under subchapter K. This view did not prevail. See S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 118–119, 452–455 (1954) ; compare sec. 1374 and sec. 1.1374–1(b)(4), Income Tax Regs. ("If a shareholder's pro rata share of the corporation's net operating loss exceeds the limitation imposed by section 1374(c)(2), such excess is not allowable as a deduction for any taxable year.") with sec. 704(d) and sec. 1.704–1(d)(1), Income Tax Regs. ("However, any loss [in excess of partnership basis] so disallowed shall be allowed as a deduction at the end of the first succeeding partnership taxable year, * * * to the extent that the partner's adjusted basis for his partnership interest at the end of any such year exceeds zero * * *.") ; see Willis, Partnership Taxation sec. 18.01 (1971).

Various situations have arisen that differ from the statutory directive of section 1374 whereby shareholders in subchapter S corporations have sought to augment their basis in stock or indebtedness in order to reap what benefits they could from a net operating loss.

Individuals asserting that corporate indebtedness guaranteed by them represents in actuality corporate indebtedness running directly to them have been unsuccessful. See *William H. Perry*, 47 T.C. 159 (1966), affd. 392 F. 2d 458 (C.A. 8, 1968) ; *Joe E. Borg*, 50 T.C. 257 (1968) ; *Milton T. Raynor*, 50 T.C. 762 (1968) ; *Neal* v. *United States*, 313 F. Supp. 393 (C.D. Cal. 1970) ; *Peter E. Blum*, 59 T.C. 436 (1972). We think *Milton T. Raynor*, *supra* at 770–771, states the correct rule:

No form of indirect borrowing, be it guaranty, surety, accommodation, comaking or otherwise, gives rise to indebtedness from the corporation to the shareholders until and unless the shareholders pay part or all of the obligation. Prior to that crucial act, "liability" may exist, but not debt to shareholders. [Citations omitted.]

Only where the guarantor actually performs is corporate indebtedness created within the meaning of section 1374(c)(2).

Where a trust is owed a debt by a subchapter S corporation and a shareholder of the corporation has a one-half interest in the trust,

the debt runs to the trust and not to the shareholder. *Robertson* v. *United States*, 32 A.F.T.R. 2d 73–5556 (D. Nev. 1973).

Where the sole beneficiary of an estate was the shareholder of a subchapter S corporation owing a debt to the estate, the shareholder was denied the loss passthrough because the debt did not run directly to her. *Ruth M. Prashker*, 59 T.C. 172 (1972). In *Prashker* the fact of the separate existence of the estate and the fact that the estate made the loan and was not a shareholder of the corporation were determinative.

To our knowledge no case has yet dealt with the precise situation involved herein, i. e., a partnership whose capital interests are owned by individuals in exact proportion to their stock ownership in a subchapter S corporation. In Rev. Rul. 69–125, 1969–1 C.B. 207, it was stated, with a citation to *William H. Perry*, *supra*, that section 1374(c)(2)(B) "encompasses only a debt of the corporation that runs directly to the shareholder." The effect of the ruling was to deny a passthrough of an operating loss to a partnership that was owed an indebtedness by a subchapter S corporation. The facts, as set forth in the revenue ruling, show that the majority shareholders of a subchapter S corporation were equal partners in a partnership and owned a majority of the interests in the partnership. We are obviously not bound by respondent's rulings, but our own analysis dictates the conclusion that Rev. Rul. 69–125 is correct. No valid differentiation can be made between this situation and the situation in which the partners in the partnership owned the complete stock interest in the corporation in direct proportion to their partnership interests. It is not the proportionability of ownership interests that is determinative. Rather, it is the crucial fact that the partnership made the loan and the partners, to the extent of their partnership interest, participated therein. If the corporation should default on the loan its effects will be felt by the partners as creditors rather than the partners as shareholders.

The existence of the partnership cannot be ignored here even though the partners were simultaneously shareholders in the subchapter S corporation. If the partners had directly loaned the money to the subchapter S corporation or treated it as an addition to capital, the result would be different. See *Ruth M. Prashker*, *supra* at 176.

The distinctions that exist between partnerships, sole proprietorships, and corporations do so from a tax viewpoint by design. To treat the partnership loan as having been made directly by the partners would be to deliberately obfuscate the distinction where no such action is called for. See *Neal* v. *United States*, *supra* at 396.

Frequently, a guarantor of a loan to a subchapter S corporation agrees to be primarily liable by permitting the lender to proceed directly against him after a default. In such circumstances he has

assumed a greater risk than a guarantor who remains secondarily liable. This heightened risk was not sufficient to justify a finding that the loan runs directly from the corporation to the shareholder in *Milton T. Raynor, supra.*

Petitioners argue that *Raynor* permits the shareholders-partners to deduct net operating losses of the corporation to the extent of partnerships loans to the corporation. An examination of the findings of fact and the opinion as a whole in *Raynor* clearly shows that the pass-through of corporate net operating losses was limited to the shareholders' adjusted basis in their stock plus the adjusted basis in direct loans each had made to the corporation. The "partnership" arrangement was designed to insure that the losses of anyone who had advanced more than his share would be made good by the other participants. See Plumb, "The Federal Income Tax Significance of Corporate Debt: A Critical Analysis and A Proposal," 26 Tax L. Rev. 369, 392 fn. 112 (1971). After finding that the corporations were entitled to subchapter S status, the Court in *Raynor* determined the amount of the corporate net operating losses that were deductible. Notes guaranteed by the individuals, notes owed to third parties, and notes given as additional security for previously incurred debt were found not to constitute "indebtedness of the corporation to the shareholder[s]" within the meaning of section 1374(c)(2)(B). Thus, in *Raynor* only direct indebtedness was utilized in computing the basis for the net operating loss passthrough. To follow the clear limiting language of section 1374(c)(2)(B) does not exalt form over substance.[4]

The "concept of indebtedness of the corporation to the shareholders as employed in the statute was intended to be comparable to actual capital investment by the shareholders," *Wheat v. United States*, 353 F. Supp. 720, 722 (S.D. Tex. 1973). This indebtedness must run directly to the shareholder. The language of the statute is clear as to this requirement. That the actual debt basis should be determined on the basis of risk and its effects has not been proposed legislatively. See Note, "An Approach to Legislative Revision of Subchapter S," 26 Tax. L. Rev. 799, 821 (1971).

[4] In rejecting petitioners' argument that a partnership should be treated as an aggregate of individuals rather than a separate entity, we find support in the recent Supreme Court decision in *United States v. Bayse*, 410 U.S. 441 (1973). Although *Bayse* did not involve subch. S, the Supreme Court considered the conflicting tax concepts of a partnership as an aggregate or an entity. The Court made clear that a partnership was an entity for purposes of computing taxable income and an aggregate for purposes of satisfying the taxpaying obligation with respect to that income. 410 U.S. at 448. Deductions, of course, have to do with the computation of taxable income and not with the satisfaction of taxpaying obligations. Consequently, *Bayse* fortifies our holding that for purposes of the deduction provided by sec. 1374 a partnership is an entity and is not to be considered an aggregate by which ownership of partnership loans is passed through to individual partners. See also fn. 5 in *Estate of William J. Ellsasser*, 61 T.C. 241, 248 (1973).

The situations where the indebtedness has been guaranteed, or runs directly to a trust or an estate, have all resulted in a denial of the loss passthrough to the extent of the debt. We think that a loan made by a partnership to the subchapter S corporation should receive the same treatment. If Congress should deem it appropriate to change [5] the language of section 1374 so as to permit the risk of the debt to be the determinative factor in locating the proper subject for the basis adjustment, then fewer individuals would be caught in this trap for the unwary. However, where the language of the statute is clear and unambiguous, it is entirely reasonable to infer that Congress deliberately intended the benefits of the subchapter S election to rest directly with those individuals who were the shareholders of their corporation. Where such direct language is used, we think the benefits of the passthrough are available only to those who satisfy the statutory requirements. Failure to do so will result in the loss of the benefit. See *Hauptman* v. *Director of Internal Revenue*, 309 F. 2d 62, 65 (C.A. 2, 1962) ; Hewitt, "Some Intriguing Recent Developments in Subchapter S," 44 Taxes 848, 850 (1966) ("serious detriment to the taxpayer pervades the subchapter, and without constant and expert counsel [its] 'simplicity' * * * can change into nightmarish, if not ruinous, complexity.")

Accordingly, we hold that the indebtedness running from Chequers, the electing small business corporation, to Regency Apartments, the partnership, was not an indebtedness of the corporation to Frankel and Golden, the individual partners. It therefore follows that the amount of the deduction to which Frankel and Golden are entitled is limited to their individual adjusted basis in the stock of the corporation and their individual adjusted basis in any indebtedness of the corporation to them. Respondent's determination is sustained.

*Decisions will be entered for the respondent.*

---

[5] See, for example, Pub. L. No. 91–683, 84 Stat. 2067, amending Internal Revenue Code of 1954 sec. 1372(e)(5)(C) in response to *Lansing Broadcasting Co.*, 52 T.C. (1969).