Hill BLALOCK, Miriam S. Blalock, Pat D. Holcomb, W.A. Crabill, Marjorie Crabill, Estate of Henry C. Self and Virginia N. Self, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Nos. DC 81–187–LS–O to DC 81–190–LS–O.

United States District Court, N.D. Mississippi, Delta Division.

July 27, 1988.

Charles M. Merkel, Cynthia I. Mitchell, Merkel & Cocke, Clarksdale, Miss., for plaintiffs.

Robert Q. Whitwell, U.S. Atty., Oxford, Miss., Ann Reid, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## OPINION

SENTER, Chief Judge.

This cause comes before the court on cross-motions for summary judgment or for judgment on the record.[1] Plaintiffs brought these civil actions seeking refunds of amounts assessed against them in 1976 and 1977. The question presented is

---

1. Trial of this cause commenced on November 30, 1987. Following empaneling of the jury, the court suggested to counsel that the case appeared to be composed entirely of legal issues and questioned whether or not there were material issues of fact that need be resolved by a jury. The parties subsequently agreed to waive jury trial and to submit the case to the court on stipulations, depositions, and affidavits. Plaintiffs' counsel now contends in his brief of May 12, 1988, that the government's opposition to his statement of facts is a violation of the agreement for waiving jury trial. The court, after careful examination of the facts submitted by the plaintiffs and the opposition by the govern-

ment, finds to the contrary. The majority of the 'factual' statements that the government objected to are legal conclusions as to the effect of certain facts. For example, in paragraph 21, the plaintiffs state that "the government's argument exalts form over substance and ignores the reality of the Self siblings use of Riverside of Marks." In the statement of facts set forth below, the court has adopted the plaintiffs' statement of facts after deleting legal conclusions. The court has supplemented these facts with information provided by the government from the partnership agreement, loan documents, and tax returns of the entities involved.

whether loans from the plaintiffs' partnership to their subchapter S small business corporation, New Buildings, Inc., constituted loans from shareholders so as to provide a basis for the plaintiffs' deduction of New Buildings, Inc.'s net operating loss under 26 U.S.C. § 1374(c)(2)(B).

## STATEMENT OF FACTS

This is a civil action consolidating four cases against the United States by plaintiffs for the recovery of $200,910.64 in income taxes assessed against the plaintiffs for the years 1976 and 1977, together with interest as provided by law. The income taxes sought to be recovered by each set of plaintiffs for each year are as follows:

|  | 1976 | 1977 |
|---|---|---|
| Hill and Miriam Blalock | $20,899.02 | $18,285.90 |
| Pat D. and Evelyn Holcomb | $24,777.78 | $19,943.40 |
| W.A. and Marjorie Crabill | $20,862.55 | $18,091.81 |
| Henry and Virginia Self | $42,429.83 | $35,620.45 |

Plaintiffs Miriam S. Blalock, Evelyn S. Holcomb, Marjorie S. Crabill, and Henry C. Self (principal plaintiffs), are siblings. They are stockholders of a corporation known as New Buildings, Inc. (New Buildings) and are partners in a partnership known as Riverside of Marks. The principal plaintiffs and their respective spouses each filed joint federal tax returns for 1976 and 1977.

New Buildings is an electing small business corporation under Subchapter S of the Internal Revenue Code. In its fiscal year ended November 30, 1976, New Buildings had a net operating loss of $193,441.15. In its fiscal year ended November 30, 1977, New Buildings had a net operating loss of $186,652.98.

Plaintiffs Evelyn Self Holcomb, Marjorie Self Crabill, Miriam Self Blalock, and Henry C. Self, deceased, along with William King Self, deceased, were the sole children of Peyton Marion Buford Self, deceased. Their father, P.M.B. Self, during his lifetime owned and managed large amounts of property, including real estate, cash, bank stock, and other property.

P.M.B. Self, from funds he had given his five children, built an oil mill known as Riverside Oil Mill, located in Marks, Quitman County, Mississippi. In 1941, the five Self siblings began a partnership known as Riverside Oil Mill, which operated the oil mill in Marks. William King Self was designated as the managing agent of this partnership and throughout his life was the manager of the oil mill, with the exception of a short period of time during World War II. The property known as Riverside Oil Mill was owned by the Self children in the following percentages:

William King Self and Henry Self each received twenty-six and one-fourth percent (26¼%) of the property;

Marjorie Self Crabill, Miriam Self Blalock, and Evelyn Self Holcomb each received fifteen and five-sixths percent (15⅚%) of the total property.

In 1941, when Riverside Oil Mill began operating, a partnership could sue and be sued only through its named partners.

Even after their father's death in 1965, the Self children elected to continue operating the Riverside Oil Mill property which they had accumulated jointly through the years and which they had inherited from their father in an aggregate to be managed jointly rather than to be divided and distributed among the five children. To formalize this agreement, on or about August 23, 1967, the five Self siblings entered into a partnership agreement. The agreement stated the partnership interests as follows:

| | |
|---|---|
| William K. Self | 26¼% |
| Henry C. Self | 26¼% |
| Marjorie S. Crabill | 15⅚% |
| Miriam S. Blalock | 15⅚% |
| Evelyn S. Holcomb | 15⅚%. |

Paragraph 8 of the Partnership Agreement provided as follows:

The capital and assets of the partnership and all monies as well as instruments for the payment of money to the partnership shall be held and taken in the name of the partnership and the monies thereof deposited in the name of the partnership in such banks or banking institutions as the parties hereto may hereafter agree to designate, and all monies credited to the

partnership therein shall be subject to withdrawal only by check made in the name of the partnership and signed by William K. Self or such other party as might be designated in writing by him.

Paragraph 5 of the Partnership Agreement provided that the fiscal year of the partnership would continue to be from August 1 through July 31 of each year. William King Self was designated as managing agent with plenary power to use and invest the funds of the Self family held in the name of Riverside of Marks as he saw fit.

Riverside Oil Mill continued doing business until the real property, plant, and facilities of the oil mill were sold to Cook Industries, Inc., in late 1969. This sale terminated the Self siblings' operation of the oil mill.

On November 2, 1970, the Self siblings amended the previously described partnership agreement to change the name of the partnership to Riverside of Marks. The agreement recited that the principal plant and facilities of Riverside Oil Mill were sold to Cook Industries, Inc., on December 1, 1969, and that the principal current assets of the partnership were real property and other assets retained and not sold to Cook Industries, Inc., stocks and securities of Cook Industries, Inc., and other stocks. Riverside of Marks filed Form 1065 federal partnership returns from 1969 until the partnership dissolved in the early 1980's.

After William King Self's death, the remaining Self siblings executed a Power of Attorney dated March 18, 1975, which invested in Henry C. Self the same powers as managing agent that had previously been granted to William King Self. Henry Self continued in that capacity until his death on or about February 8, 1985.

The principal assets of Riverside of Marks in 1976 and 1977 were cash assets, stocks, bonds, notes, securities, and other intangible investments. William King Self and later Henry Self made all decisions regarding the management and investment of these funds. Nevertheless, the funds were owned by the Self children in the percentages described above, and the Self children were free at any time to use these funds for their personal use at their own discretion.

The three female siblings were raised in a family where traditionally women played no part in business affairs. Although Mr. Self generously provided for his three daughters, the daughters never had any active role in the management decisions regarding their money. These decisions were left to William King and Henry Self.

In the late 1960's, William King Self conceived the idea of a business venture based on constructing housing under government subsidized programs. He formed the corporation, New Buildings, Inc., which was incorporated on December 1, 1970, with the shareholders duly electing Subchapter S status. Stock ownership of New Buildings from June 2, 1975, to January 16, 1976, was as follows:

| | |
|---|---|
| Bankston Waters | 46% |
| Laura Waters | 4% |
| William Self | 13% |
| Henry C. Self | 13% |
| Evelyn S. Holcomb | 8% |
| Marjorie S. Crabill | 8% |
| Miriam S. Blalock | 8%. |

After January 16, 1976, stock ownership of New Buildings was as follows:

| | |
|---|---|
| William Self | 26% |
| Henry C. Self | 26% |
| Evelyn S. Holcomb | 16% |
| Marjorie S. Crabill | 16% |
| Miriam S. Blalock | 16%. |

Stock ownership of New Buildings after January 16, 1976, was reposed solely in the Self siblings in virtually the same percentages as their ownership in Riverside of Marks.

The Self siblings used Riverside of Marks for convenience to enable their managing agent, William King Self, to make quick investment decisions and take immediate action when necessary in his view to further their business interests. Joint management of the funds and aggregation of the funds in one account enabled the managing agent to more easily make investments with those funds. For example, instead of having to obtain permission from the four siblings to make an investment and then obtain five individual checks for investment purposes, the joint management

of the funds through Riverside of Marks enabled William King Self to make an investment decision and issue the check for that purpose on the same day.

The Self siblings were free to and did use their funds in Riverside of Marks for personal purposes. They used the Riverside of Marks account both to pay personal expenses and for withdrawals of larger sums of money for personal uses. The withdrawals were in varied amounts and were memorialized by accounting entries which properly charged the withdrawal to such partner's respective account. Records were kept of all debits and credits to each family member's account, and those accounts were balanced at the end of the year prior to distribution of any income to adjust for the funds drawn and credited to each separate account. Thus, although the funds were co-mingled, records were kept so that each sibling was charged only with his or her own draws or debits.

In a similar manner, investments and notes from other entities were paid for and debited on a pro rata basis among the family members, and income payments were credited on the same pro rata basis. The numerous loans to New Buildings were treated in the same manner, so that each of the sibling's accounts was debited on a 26, 26, 16, 16, 16 pro rata basis for each loan and was credited on a like basis for each interest and principal payment.

For the year ending November 30, 1976, New Buildings reported outstanding loans from shareholders in the amount of $888,-209.56. For the year ending November 30, 1977, New Buildings reported outstanding loans from shareholders in the amount of $1,252,182.42.

For the year ending November 30, 1976, New Buildings reported a net operating loss of $193,441.15. The information returned divided this loss proportionately among the five Self family members as shareholders in the percentages of their ownership of the New Buildings stock. The same was true for the year ending November 30, 1977, when New Buildings reported a net operating loss of $186,-652.98.

On its 1976 partnership return, Riverside of Marks reported income from gross receipts of $261,554.16, less cost of goods sold of $373,921.35; income from interest of $604,814.10; income from rents of $19,-798.60. Riverside of Marks deducted, as ordinary and necessary expenses, the amount of $728,217.25, including salaries in the amount of $75,121.22, rent in the amount of $18,551.65, interest expenses in the amount of $503,008.27. Schedule D of the partnership return shows short-term capital gains of $95,039.92 comprised of stock and commodity transactions and collection on installment sales.

Schedule L of the 1976 partnership return lists assets of the partnership at the beginning of the fiscal year in the amount of $7,128,202.00. Those assets include trade notes and accounts receivable in the amount of $4,085,370.01, buildings and other fixed assets in the amount of $716,-969.21 (less depreciation) and other investments in the amount of $1,835,797.94.

The depreciation schedule of the 1976 partnership return includes as fully depreciated property of the partnership an airplane with a cost of $392,738.55. The depreciation schedule also lists as depreciable assets belonging to the partnership: six parcels of residential property, three additional airplanes, buildings and equipment of Fulton Gin, and several other buildings, plus various equipment, fixtures, and furniture.

On its 1977 partnership return, Riverside of Marks reported total income in the amount of $647,657.91 and total deductions in the amount of $553,133.64. Interest income for the partnership for 1977 was reported at $542,218.04; interest expense deductions were taken in the amount of $357,-952.61.

The individual plaintiffs did not report interest income or expense from their activities respecting New Buildings on the Form 1040 Joint Federal Tax Returns for the years 1976 and 1977. Rather, the plaintiffs reported income or loss from the partnership Riverside of Marks on the Schedule 2 of those returns.

Prior to the beginning of the fiscal year of New Buildings ending November 30, 1976, the principal plaintiffs had deducted net operating losses as shareholders of the corporation which reduced their cost basis in the stock of New Buildings to zero.

Riverside of Marks borrowed money from Deposit Guaranty Bank in Jackson, Mississippi, during 1976 and 1977, which in turn was in part loaned to New Buildings. The notes were signed by C.R. Owen as Vice President of Finance of Riverside of Marks without any indication on the face of the notes of the identity of the individual partners.

During 1976 and 1977, Riverside of Marks made loans to New Buildings. The contemporary computer-generated balance sheet for the partnership Riverside of Marks for the period ending November 30, 1976, lists as assets of the partnership accounts receivable (A/R) from New Buildings in the amount of $54,350.00, notes receivable (N/R) in the amount of $882,-859.56, and interest receivable (I/R) in the amount of $153,853.01.

The contemporaneous computer-generated balance sheet for New Buildings for the period ending November 30, 1976, lists as liabilities of the corporation accounts payable (A/P) to Riverside of Marks in the amount of $878,209.56 and interest payable (I/P) in the amount of $153,853.01.

The contemporaneous computer-generated balance sheet for the partnership Riverside of Marks for the period ending December 31, 1977, lists as assets of the partnership notes receivable from New Buildings in the amount of $1,000.00, notes receivable in the amount of $1,025,222.42, and interest receivable in the amount of $238,110.01.

The contemporaneous computer-generated balance sheet for New Buildings for the period ended November 30, 1977, lists as liabilities of the corporation accounts payable in the amount of $1,020,934.41 and interest payable in the amount of $231,-249.01.

The federal corporate Form 1120–S tax returns filed by New Buildings, Inc., for the years ended November 30, 1976, and November 30, 1977, respectively, reflected loans from shareholders in the amounts of $888,209.56 and $1,252,183.42.

Promissory notes executed on November 30, 1978, by New Buildings to the principal plaintiffs purportedly evidencing indebtedness of the corporation to the individuals were executed after the ongoing or completed audit of the Internal Revenue Service which resulted in the disallowance of the net operating deduction on the plaintiffs' individual returns.

In their federal income tax returns for 1976 and 1977, plaintiffs deducted net operating losses of New Buildings to the extent of the basis of advances made by Riverside of Marks, proportionate to the principal plaintiffs' interest in the partnership. Following an audit of the returns, the Commissioner of Internal Revenue determined that the plaintiffs improperly deducted the net operating losses of New Buildings and assessed deficiencies. Plaintiffs paid the deficiencies and now sue for refund of these amounts.

## CONCLUSIONS OF LAW

■ The issue in each of these cases is whether the advances made by Riverside of Marks to New Buildings are to be treated as advances by the individual shareholders to the corporation for the purpose of 26 U.S.C. § 1374(c)(2)(B). Section 1374 permits the shareholders of a Subchapter S corporation to deduct the net operating loss of the corporation proportionate to their shareholdings from gross income on the individual shareholder's personal return. This deduction is limited by section 1374(c)(2) to the sum of the "adjusted basis ... of the shareholder's stock ... determined as of the close of the taxable year of the corporation" and "the adjusted basis ... of any indebtedness of the corporation to the shareholder."

Courts have consistently held that the term "indebtedness" for the purposes of section 1374 means an actual indebtedness which runs directly from the corporation to the shareholder. *Underwood v. Comm'r.*, 535 F.2d 309, 311–12 (5th Cir.1976) (guarantor status insufficient to increase basis,

taxpayer must increase 'actual capital investment' in corporation). Plaintiffs point out that during the years in question, Mississippi law held that a partnership was merely an aggregation of its individual members and not a separate entity. *See, e.g., Scott Co. v. Enco Const. Co.*, 264 So.2d 409 (Miss.1972). The plaintiffs argue that the loan by Riverside of Marks was a loan by its individual partners because, under Mississippi law, there was no partnership. *See, e.g., Nichols v. State*, 144 So. 374 (1932) (holding that ownership of property was in individual partners and not in the partnership).

However, the Fifth Circuit has held that the adoption of the Uniform Commercial Code by Mississippi in 1968 made it possible for a partnership as an entity to be a debtor. *See In re Katz*, 563 F.2d 766, 768 (5th Cir.1977). Miss.Code Ann. § 75–9–105(1)(m) defines a "secured party" as a "lender, seller or other person." As noted by the Fifth Circuit, "person" is defined by Miss.Code Ann. § 75–1–201(30) to include "an individual or an organization," and "organization" is defined by Miss.Code Ann. § 75–1–201(28) to include a partnership. The court concludes that the adoption of the Uniform Commercial Code by the Mississippi Legislature empowered partnerships to act as creditors. The plaintiffs' contention that only the individual partners, and not the partnership, could hold New Buildings, Inc.'s indebtedness is hereby rejected.

In the alternative, plaintiffs contend that the ability of the individual siblings to draw funds from the accounts at will demonstrates that Riverside of Marks was not an independent entity but merely an investment conduit for its individual partners.

■ Determination of whether a partnership exists as an entity is to be made under federal, not local, law. *Comm'r. v. Tower*, 327 U.S. 280, 287–88, 66 S.Ct. 532, 536, 90 L.Ed. 670 (1946). The term "partnership" is not limited to its common-law meaning. Rev.Rul. 54–613, 1954–2 C.B. 269; Rev.Rul. 54–614, 1954–2 C.B. 171. Section 761(a) of the Internal Revenue Code of 1954 defines a partnership as including "a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a corporation or a trust or estate." The question of whether an arrangement constitutes a partnership turns on whether, "considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." *Comm'r. v. Culbertson*, 337 U.S. 733, 742–43, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659 (1949).

■ The evidence before the court shows that the Self siblings used the Riverside of Marks partnership to make and manage joint investments. The 1976 return shows continuing operations in the form of entries for gross receipts and cost of sales. Riverside of Marks filed a partnership return in each year. Because the plaintiffs held themselves out as a partnership and reported income as a partnership, they are estopped from denying that Riverside of Marks is a partnership. *Cf., Gray v. Powell*, 314 U.S. 402, 414, 62 S.Ct. 326, 333–34, 86 L.Ed. 301 (1941); *Higgins v. Smith*, 308 U.S. 473, 477, 60 S.Ct. 355, 357–58, 84 L.Ed. 406 (1940); *Cornelius v. Comm'r.*, 494 F.2d 465, 471 (5th Cir.1974).

The precise issue before this court was previously considered by the Tax Court in *Frankel v. Comm'r.*, 61 T.C. 343 (1973), *aff'd without published opinion*, 506 F.2d 1051 (3rd Cir.1974). The court there relied in part on the fact that 26 U.S.C. § 1371 does not allow any entity other than individuals, certain trusts and certain estates to be a shareholder in a Subchapter S corporation. The court adopted the Commissioner's argument that "since stock owned by a partnership is not deemed owned by the partners, then an indebtedness to a

partnership is not deemed owed to the individual partners for the purposes of section 1374(c)(2)(B)."

The court also relied on the holding in *United States v. Basye*, 410 U.S. 441, 93 S.Ct. 1080, 35 L.Ed.2d 412 (1973). The Supreme Court held that a partnership is an entity for purposes of computing taxable income and an aggregate for purposes of satisfying the tax obligations. *Id.* at 449, 93 S.Ct. at 1085–86. The tax court reasoned that as section 1374 provides for a deduction (an item used in computing taxable income), the partnership cannot be considered as an aggregate as to that provision.

The court finds the reasoning of the tax court in *Frankel* to be persuasive. Plaintiffs' claims for refunds for 1976 and 1977 will be denied.

An appropriate order shall issue.

## ORDER DISMISSING CAUSE

In accordance with an opinion this day rendered, the court finds that plaintiffs' claims for refund are not warranted.

It is, therefore, ORDERED:

That judgment is rendered for defendant and this cause is dismissed with prejudice.