T.C. Memo. 2000-355


UNITED STATES TAX COURT


ESTATE OF ALTON BEAN, DECEASED, GARY A. BEAN, ADMINISTRATOR, AND
MABLE BEAN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

GARY A. BEAN AND CYNTHIA BEAN, Petitioners v. COMMISSIONER OF
INTERNAL REVENUE, Respondent


Docket Nos. 5228-99, 5229-99.          Filed November 15, 2000.


James Allen Brown, for petitioners.

Brian A. Smith, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


SWIFT, Judge:  These cases were consolidated for trial, briefing, and opinion.  For years 1987 through 1992, respondent determined deficiencies in petitioners' Federal income taxes and accuracy-related penalties as follows:

Alton and Mable Bean

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|---------------------------------------|
| 1987 | $101,941 | --- |
| 1988 | 14,143 | --- |
| 1989 | 26,741 | --- |
| 1990 | 51,787 | $10,357 |
| 1991 | 54,005 | 10,801 |
| 1992 | 39,656 | 7,931 |

Gary and Cynthia Bean

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|---------------------------------------|
| 1987 | $  3,041 | --- |
| 1988 | 3,056 | --- |
| 1989 | 8,891 | --- |
| 1990 | 24,575 | $4,915 |
| 1991 | 31,999 | 6,400 |
| 1992 | 19,378 | 3,876 |

The issues for decision involve whether petitioners are entitled to increased bases in their investments in an S corporation as a result of (1) petitioners' personal guaranties of the corporation's indebtedness on bank loans, (2) a transfer of partnership assets to the S corporation, and (3) corporate liabilities owed to a partnership. Also at issue is whether petitioners are liable for the accuracy-related penalties.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Alton Bean, decedent, died in January of 1999 in Amity, Arkansas. Decedent and petitioner Mable Bean were husband and wife and the parents of petitioner Gary Bean. Petitioners Gary and Cynthia Bean are husband and wife. At the time the petitions

were filed, Mable, Gary, and Cynthia Bean resided in Amity, Arkansas.

Shortly after decedent's death, Gary Bean was appointed administrator of decedent's estate.

For convenience, hereinafter all references to petitioners refer to decedent and Mable Bean and to Gary and Cynthia Bean.

For many years, decedent and Gary Bean jointly owned and managed a trucking business in Amity, Arkansas. Through 1992, decedent and Gary Bean operated the trucking business as a partnership (the Partnership). During all relevant periods, decedent owned a 75-percent interest in the Partnership, and Gary Bean owned a 25-percent interest in the Partnership.

On April 30, 1988, decedent, Mable, and Gary Bean formed an Arkansas corporation (the Corporation) that elected in 1989 to be taxed pursuant to subchapter S of the Internal Revenue Code. From early 1988 through 1992, decedent and Mable Bean owned 75 percent of the stock in the Corporation, and Gary Bean owned the remaining 25 percent of the stock in the Corporation.

Through 1992, the Corporation, through its employees, provided maintenance on and parts for the trucks of the Partnership.

On October 9, 1990, decedent and Mable Bean executed a $960,019 second mortgage on their personal residence to the Bank

of Amity in order to secure certain indebtedness that the Corporation owed to the Bank of Amity.

On December 30, 1992, to provide operating capital for the Corporation, the Bank of Amity extended to the Corporation a $600,000 line of credit. To secure repayment of funds actually provided to the Corporation under the line of credit, the Bank of Amity required each petitioner to sign personal guaranties for repayment of such funds and to mortgage in favor of the Bank of Amity certain additional real property they owned with a fair market value, on December 23, 1993, of $570,500.

In the subsequent years through the date of trial, all payments to the Bank of Amity that were made on the above indebtedness were made by the Corporation. The Bank of Amity has not foreclosed on the loans made to the Corporation.

On or shortly before December 31, 1992, the Partnership transferred all but one of its assets to the Corporation, the Corporation assumed all liabilities of the Partnership, and the Corporation took over ownership and operation of the Partnership's trucking business. The Corporation transferred no cash to the Partnership. For income tax purposes, petitioners treated this transaction as a sale of assets by the Partnership to the Corporation for no gain to the Partnership (i.e., the Partnership treated the amount of the liabilities assumed by the Corporation as equal to the Partnership's tax basis in the assets

transferred). As of December 31, 1992, the partners of the Partnership had not dissolved the Partnership.

For 1990 and 1991, the Corporation realized operating losses of $1,190,460 and $482,481, respectively.

On their joint Federal income tax returns for 1987 through 1992, prepared by petitioners' accountant, petitioners deducted (through net operating loss carrybacks and carryovers) their entire respective shares of the previously mentioned losses of the Corporation for 1990 and 1991.

On audit, respondent determined that petitioners lacked sufficient tax bases in their investments in the Corporation to be entitled to any of the above-claimed loss deductions.

OPINION

Under section 1366, shareholders in an S corporation may deduct their pro rata shares of the corporation's losses to the extent the losses are supported by the shareholders' adjusted bases in the stock and in any indebtedness of the S corporation to the shareholders.

Unless the shareholders of the S corporation incur an economic outlay with respect to indebtedness that the corporation owes to third parties, the shareholders are not entitled to increase their bases in their stock by the amount of the indebtedness. See, e.g., Bergman v. United States, 174 F.3d 928, 932-934 (8th Cir. 1999); Estate of Leavitt v. Commissioner, 875

F.2d 420, 422 (4th Cir. 1989), affg. 90 T.C. 206 (1988). Accordingly, mere shareholder guaranties of corporate indebtedness to third parties generally do not qualify as an economic outlay, and they do not qualify as indebtedness from the S corporations to the shareholders "until and unless the shareholders pay part or all of the * * * [corporate indebtedness]." Raynor v. Commissioner, 50 T.C. 762, 771 (1968); see also Bergman v. United States, supra; Perry v. Commissioner, 47 T.C. 159, 162-163 (1966), affd. 392 F.2d 458 (8th Cir. 1968). Likewise, where corporate indebtedness to third parties is merely secured by the shareholders' property, no economic outlay has occurred, no indebtedness to the shareholders exists, and shareholders are not entitled to increase their bases in the S corporation by the amount of the corporate indebtedness secured by the shareholders. See Calcutt v. Commissioner, 84 T.C. 716, 720 (1985); Erwin v. Commissioner, T.C. Memo. 1989-80.

While taxpayers are free to organize their affairs as they choose, once having done so, taxpayers generally are held to the tax consequences of their choice and may not enjoy the benefit of some other route that they might have chosen to follow but did not. See Commissioner v. National Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 149 (1974), cited in Selfe v. United States, 778 F.2d 769, 773 (11th Cir. 1985).

Petitioners herein contend that they are entitled to increase their tax bases in the Corporation's indebtedness to the Bank of Amity, to the extent they personally guaranteed and secured such indebtedness. Petitioners rely heavily on <u>Selfe v. United States</u>, <u>supra</u>. In that case, a bank made a loan to a taxpayer individually, and the taxpayer secured the loan by a pledge to the bank of shares of stock in a corporation. When the taxpayer later incorporated a business, the above loan was converted into a loan to the new corporation, accompanied by the taxpayer's guaranty of the corporation's repayment of the loan to the bank.

The Court of Appeals for the Eleventh Circuit held that, although shareholder guaranties of subchapter S corporate indebtedness generally will not increase the shareholder's tax basis in the corporation, a narrow exception may exist "where the facts demonstrate that, in substance, the shareholder has borrowed funds and subsequently advanced them to * * * [the] corporation." <u>Id.</u> Because material facts remained in dispute, in <u>Selfe</u>, the Court of Appeals remanded the case to the trial court to evaluate whether the loan from the bank should be treated in reality as a loan to the taxpayer and then to the S corporation.

By contrast, in the instant cases, the Bank of Amity extended funds directly to the Corporation, and the Corporation

has made all payments on the indebtedness to the bank. Petitioners could have structured the indebtedness as indebtedness to themselves, but petitioners chose to avoid primary liability thereon.

Petitioners' secondary liability, as guarantors, may have been necessary for bank approval of the indebtedness, but until or unless petitioners are called upon to pay on the indebtedness, petitioners' secondary liability is not enough, for tax purposes, to treat the indebtedness as if made to petitioners. Petitioners have not established that they incurred an economic outlay with regard to the Corporation's indebtedness to the Bank of Amity, and petitioners are not entitled to increase their tax bases in their investments in the Corporation with respect thereto.

Because assets of the Partnership were transferred to the Corporation, petitioners also contend that they are entitled to increase their tax bases in the Corporation (1) by the amount that the value of the assets the Partnership transferred to the Corporation exceeds the amount of the Partnership's liabilities assumed by the Corporation, (2) by the amount of any Partnership "equity" transferred to the Corporation, and (3) by the amount of certain additional amounts allegedly owed to the Partnership.

In order to avoid recognition of partnership capital gain on the transfer of assets to the Corporation, the partners of the Partnership structured the transfer as a sale of assets to the

Corporation for the assumption of the Partnership's liabilities, the amount of which was treated as equaling the Partnership's tax basis in the assets.  The transaction was not structured as a taxable distribution of partnership assets to the partners followed by a contribution of the assets to the Corporation with a stepped-up tax bases.  Petitioners have given us no sufficient justification for recasting the transaction.

Even if the value of the Partnership assets that were transferred to the Corporation exceeded the liabilities of the Partnership that were assumed by the Corporation, even if Partnership "equity" was transferred to the Corporation, and even if the Corporation owed additional amounts to the Partnership, such excess value, equity, or amounts would not increase the tax bases of the shareholders in the Corporation.  As explained in Frankel v. Commissioner, 61 T.C. 343, 348 (1973) (involving the predecessor to section 1366)--

> The existence of the partnership cannot be ignored here even though the partners were simultaneously shareholders in the subchapter S corporation.  If the partners had directly * * * [transferred funds] to the subchapter S corporation or treated it as an addition to capital, the result would be different.
>
> The distinctions that exist between partnerships, sole proprietorships, and corporations do so from a tax viewpoint by design.  To treat the partnership * * * [transfer] as having been made directly by the partners would be to deliberately obfuscate the distinction where no such action is called for.  [Citations omitted.]

In the instant cases, the Partnership, not the shareholders of the S corporation, made the transfer to the Corporation, and only the Partnership would receive tax bases associated with the transfer.

Despite the similar ownership interests of the partners of the Partnership and of the shareholders of the Corporation, petitioners, as shareholders in the Corporation, may not increase their tax bases in their investments in the Corporation for any purported value of Partnership assets (in excess of the Partnership's liabilities assumed), for any purported Partnership's equity transferred to the Corporation, or for any amounts owed to the Partnership.

Further, no credible evidence substantiates the existence of the additional amounts allegedly owed to the Partnership. We sustain respondent's deficiency determinations for each year in issue.

Lastly, petitioners contend that the Corporation underreported income for the years in issue and that the additional unreported income should increase petitioners' tax bases in the Corporation. Petitioners, however, for the years in issue have provided no credible evidence that the Corporation's income was underreported.

Under section 6662(a), taxpayers are subject to accuracy-related penalties on underpayments with respect to which they

were negligent.  Negligence, in the present context, reflects taxpayers' failure to make reasonable attempts to comply with the Internal Revenue Code.  See sec. 6662(c).

Accuracy-related penalties may be avoided if taxpayers show that the errors were caused, in some significant part, by detrimental reliance on the advice of qualified tax professionals and that their reliance was reasonable and in good faith.  See sec. 6664(c); United States v. Boyle, 469 U.S. 241, 250 (1985); Stanford v. Commissioner, 152 F.3d 450, 460-461 (5th Cir. 1998), affg. in part and vacating on this issue 108 T.C. 344 (1997).

Petitioners employed an accountant to prepare their tax returns for the years in issue.  Having considered petitioners' and the accountant's testimony, we conclude that petitioners reasonably relied on the accountant to ascertain their tax bases in the indebtedness of the Corporation.  We do not sustain respondent's imposition of the accuracy-related penalties.

To reflect the foregoing,

Decisions will be entered for respondent as to the deficiency amounts and for petitioners as to the accuracy-related penalties.